R. D. BRUMIT and R. W. Brumit, d/b/a
B&B Investment Company,
Plaintiffs–Appellants,

v.

GRAYBEAL GLASS COMPANY, INC.,
Defendant–Appellee.

Court of Appeals of Tennessee,
Eastern Section.

June 18, 1980.

Certiorari Denied by Supreme Court
Sept. 2, 1980.

T. Arthur Scott, with Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for plaintiffs–appellants.

Eugenea Pollock, with Paul J. Sherwood, Johnson City, for defendant–appellee.

## OPINION

SANDERS, Judge.

This appeal involves the question of the right to enforce a mechanic's lien.

In October, 1977, the Plaintiffs–Appellants, R. D. Brumit and R. W. Brumit, d/b/a B&B Investment Company, entered into a contract with Consortium Construction Company for the construction of a Judy's hamburger restaurant in Elizabethton. The Plaintiffs were to pay Consortium $114,777 for the construction of the building. Construction was to start within seven days after a building permit was issued and to be completed within 90 calendar days.

Consortium let a number of subcontracts on the job including one to the Defendant–Appellee, Graybeal Glass Company, Inc. The testimony fails to show what the Defendant's, Graybeal's, subcontract was for but the exhibits indicate it consisted of some bronze glass with frames, five sets of 3′0 × 7′0 doors, two windows and a transom, for which it charged $5,601.79. It submitted one bill to the contractor on April 27, 1978, and its final bill on May 25. The building was completed in May except for the small item here in dispute and the place was open for business between May 30 and June 2.

The Plaintiff filed three separate notices of completion of improvements as provided in *T.C.A.* § 64–1145. The first notice was filed on May 15. After that date some paving was done around the building and a second notice was filed on June 12. At a later date the attorney representing a lending institution which was financing the building questioned the acknowledgment on the previous notice and a third one was filed on July 11.

The Defendant did not give notice it was claiming a lien within 10 days after the filing of either of the notices by the Plaintiffs, as required by *T.C.A.* § 64–1147.

On or about August 10 one of the Plaintiffs called the Defendant and told one of its officers there was a door that needed adjusting and requested they send a workman out to complete the work. In response to this call a workman was sent out and he did some work on the door and perhaps other work but the record fails to disclose what it was.

In October the Plaintiffs had learned the contractor, Consortium, had not paid all of its subcontractors. The Plaintiffs were still holding some funds due under the contract price and on October 9 they filed a bill of interpleader in the circuit court against the contractor and four subcontractors and tendered into court $8,407.10 and asked the court to make a distribution of the funds.

The Defendant was not a party to this suit but on October 10 it filed a mechanic's lien on the property under *T.C.A.* § 64–1101, *et seq.*

On January 15 the Plaintiffs filed an amendment to their interpleader complaint interpleading the Defendant and three additional subcontractors and at the same time paid into court an additional $11,477.70 which they had held as retainage under their contract with Consortium.

Upon the hearing of the interpleader case it was determined that the funds paid into court were sufficient to pay approximately 75% of the claims of all of the subcontractors. All of the other subcontractors accepted the prorata payment except the Defendant, Graybeal Glass Company, Inc. It insisted it was entitled to a lien on the property for the remaining portion of its claim.

This issue was tried before the circuit judge who found in favor of the Defendant and allowed it a lien on the property for $1,256.81. The Plaintiff has appealed and presented the following issues:

"I. Whether the trial court erred as a matter of law in finding that the telephone conversation between one of the Plaintiffs–Appellants and an employee of Defendant–Appellee regarding the correction of defective work served to renew the period of time within which Defendant–Appellee could file its lien.

"II. Whether the trial court erred as a matter of law in finding that the lien of Defendant–Appellee was valid because it was filed within ninety (90) days of the Notice of Completion filed by Plaintiffs–Appellants.

"III. Whether the trial court erred as a matter of law in finding that the lien of Defendant–Appellee was valid even though no action to enforce same pursuant to *T.C.A.* § 64–1115 was commenced within ninety (90) days after Notice of Lien was given.

"IV. Whether the trial court erred in considering the validity of the lien of Defendant–Appellee when Defendant–Appellee had filed no action to enforce said lien."

In his determination of the case the trial court said: "Gentlemen, the Court finds that by a preponderance of the evidence in this matter that the Graybeal lien is valid, really for two reasons. First of all, the Court notes that within the ninety day period of the third Notice of Completion the lien was actually filed within ninety days. Second, the Court is of the opinion that the telephone call by Mr. Brumit which is not denied and is testified to positively by Mr. Graybeal of August 10th of 1978 serves to renew the period of time within which the lien could be filed."

We most respectfully disagree with the trial court in its findings. However, we need to go further for a proper disposition of the case.

■ Addressing first the question of whether or not the Defendant's lien was filed within 90 days of the Plaintiffs' third notice, the third notice was given on July 11 and the Defendant's lien was filed on October 10, which is 91 days. So if the court was considering July 11 as the date of completion of the building, the lien was not timely filed.

■ As to the proposition that the August 10 telephone conversation served to renew the period of time within which the lien could be filed seems to be without precedent. We have been cited to no authority, nor have we found any, that would indicate that a request by an owner of property for a contractor to correct or complete his work would have any bearing on when the lien should be filed. It is the performance of the work that is controlling.

This brings us to consideration of what work was performed. The witness for the Defendant did not go to the premises and had no personal knowledge of what work was done. He says an employee was sent to the job on two days and worked about six hours each day. He also said some materials were sent to the job but was unable to say what they consisted of except he said it was metal. He estimated the cost of labor and materials at about $325. The witness for the Plaintiff testified the only work to be done was the adjustment of a "squeaky" door. He said there were some screws out of the door or the threshold. The Defendant made no charge for the work or materials furnished. The statement which the Defendant made out in connection with the work read as follows: "Repaired doors–furnished equipment to complete contract. Charged on original bill–No charge."

The Plaintiffs rely upon the case of *Cooper v. Hunter*, Tenn.App., 569 S.W.2d 852, as support for their insistence that the work performed by the Defendant on August 10 was trivial and insufficient to relate the date of completion of the work to that date, and we agree.

■ We think it is significant that the Defendant's billing shows that the only labor performed was "Repaired doors." The

materials furnished were "equipment to complete contract." There was no charge for the labor or materials. It had all been "charged on original bill" and the original billing was April 27 with a subsequent billing on May 25. The building had been accepted by the owners and had been open for business for more than two months before August 10. The record fails to show when the Defendant performed its last work on the building prior to August 10 but we think it a fair conclusion to draw that it was prior to its final billing on May 25. We also think it is fair to conclude the Defendant considered its work was completed since it had performed no work on the building and had submitted its bill for all labor and materials more than two months prior to August 10. Also, it did not voluntarily return to complete its contract. It returned to do work requested by the Plaintiffs. In addition, if the labor and material furnished amounted to only $325 this would be a trivial amount compared to the total contract price of $144,777.

There is still another compelling reason why the Defendant's lien must fail. Even if it could be said the filing of the lien on October 10 was within the time required by statute, since the Defendant failed to file suit for the enforcement of the lien within 90 days after the filing, the lien was lost.

T.C.A. § 64–1115 provides a subcontractor's lien shall continue for 90 days from the date of notice "and until the final termination of any suit for enforcement *brought within that period*." (Emphasis ours.)

After Defendant filed its lien no action was ever taken to enforce it. Since the lien was filed on October 10, under the statute the Defendant had until January 8, 1979, within which to file suit for its enforcement. Had suit been filed by that time the lien would have remained in force until a final determination of that suit, but having failed to file suit within the 90 days, the lien was lost. See *Warner v. Yates*, 118 Tenn. 548, 102 S.W. 92 (1907) and *Hamilton Nat. Bank v. Long*, 189 Tenn. 562, 226 S.W.2d 293 (1949).

The Defendant argues that since the Plaintiffs filed their original suit in this cause on October 9 and amended the complaint to interplead the Defendant on January 15, 1979, the bringing of the Defendant into the litigation related back to October 9 and that corrected any deficiency in the Defendant's not having filed suit to enforce its lien within the 90-day period.

We cannot agree. Its right to enforce the lien was terminated prior to its being made a party to this litigation. In the case of *Hamilton Nat. Bank v. Long, supra*, the court said:

" 'It is not questioned that the subcontractor had a lien when the garnishment notice was served. His lien had existed from the date of the visible commencement of the work. *Brown v. Brown & Co.*, 25 Tenn.App. 509 [160 S.W.2d 431]. However, to set up the lien against the owner a strict compliance with the statute as to notice, *Conger Lumber (& Supply) Co. v. White*, 17 Tenn.App. 206, 66 S.W.2d 999, registration, *McDonnell v. Amo*, 162 Tenn. 36, 41 [34 S.W.2d 212], and timely institution of suit, *Warner v. A. H. Yates & Co.*, 118 Tenn. 548 [102 S.W. 92], is necessary.' "

The issues are resolved in favor of the Appellants. The judgment of the trial court is reversed and the case is remanded for such further proceedings as are necessary to adjust the rights of the parties. The cost of this appeal, together with the cost of the trial court, is taxed to the Appellee.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.