**In re Stanley Paul JOHNSON, Judy Johnson, Debtors.**

**Flossie WEILL, Trustee, Plaintiff,**

**v.**

**EVANS LUMBER COMPANY, INC., Defendant.**

**Bankruptcy No. 1–80–00778.**
**Adv. No. 1–81–0218.**

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 16, 1982.

Flossie Weill, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiff.

Walter E. Hooper, Milligan, Hooper, Harris & Barry, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee in bankruptcy brought this action against Evans Lumber Company to recover as preferential transfers two payments made to it by the debtors within 90 days before they filed their petition in bankruptcy. See 11 U.S.C. § 547(b).

The court finds the facts as follows:

In 1979, one of the debtors, Stan Johnson, was engaged in the construction business as Stan Johnson Construction Company. He built houses on two subdivision lots, number 303 and 359 in Hidden Harbor subdivision, owned by him and his wife, Judy Johnson. He bought materials for use in the construction from Evans Lumber Company, the defendant.

Evans Lumber made its last delivery of materials for use on lot 303 on August 23, 1979. It made its last delivery for lot 359 on November 1, 1979. Stan Johnson testified that work on lot 303 was completed sometime in September, 1979. He did not testify as to when work was completed on lot 359.

Judy Johnson kept the books for her husband's construction company and wrote checks to pay creditors. She also did other office work. On January 30, 1980, she filed with the register's office completion notices as to both lots stating that work was completed on that day. She testified that she had filed fifteen to twenty completion notices, and as a matter of course, was told by employees of the register's office to show the date of filing as the date of completion.

Chattanooga Federal Savings and Loan was named in the completion notices as the person to whom lien notices should be sent. It did not receive any written notice from Evans Lumber within ten days after the completion notices were filed. Mr. Cole, who testified on behalf of Chattanooga Federal, was not at the closing of the sale of either house and lot and could not say what notice might have been given then.

Also on January 30, 1980, Judy Johnson wrote a check to Evans Lumber Company for $2,300.00, in payment of the amount due for materials furnished for lot 303. The check was charged against the construction company's checking account on February 6, 1980.

Lot 303 and the house were apparently sold in late February, 1980. The Johnsons executed a deed dated February 25, 1980. A closing statement dated February 25, 1980, shows that the buyer's lender paid $10,443.48 to the Johnsons as their share of the proceeds of the sale.

After the trial, the trustee offered into evidence a notice of lien on lot 303 filed by Lowe's of Tennessee. The notice was filed in September, 1979, for a lien of $8,768.43. The trustee also sought to prove that because of this filing Lowe's was paid $9,375.57 on February 22, 1980.

On February 11, 1980, the Johnsons conveyed lot 359 with its improvements. A settlement statement, dated February 11, 1980, shows that the buyers' lender paid the Johnsons $11,774.45 from the proceeds of the sale. The construction company's ledger shows two deposits on February 14, 1980, attributed to lot 359.

Evans Lumber Company was paid $8,500.00 on account of materials furnished for use on lot 359 by check dated February 11, 1980, and paid out of the construction company's checking account on February 19, 1980. Evans Lumber sought to prove that the check was written and delivered on February 8, 1980, rather than February 11, 1980.

Theodore Evans, chairman of the board of Evans Lumber, and Mike Goodman, its accountant, testified on behalf of Evans Lumber. Mr. Evans testified that on Thursday, February 7, 1980, he told a salesman to get a check from the Johnsons on Friday, since the sale closing was scheduled for Monday, the eleventh. He further testified that the check was brought in on Friday.

Mike Goodman testified that checks received by the lumber company are posted the next business day after they are received. This apparently was done as to the $2,300.00 check written on January 30, 1980.

He also testified that Evans Lumber is closed on weekends, so that checks received on Friday are posted on Monday. The $8,500.00 check on account of lot 359 was posted on Monday, February 11, 1980, and should have been received on Friday, February 8. Mike Goodman also testified that the check was brought in by a salesman who is no longer employed by Evans Lumber Company.

Judy Johnson marked the relevant invoice as paid on February 11, 1980, and made a ledger entry showing payment on February 11. She did not remember writing the check earlier than February 11. She also did not remember whether it was mailed or picked up by someone from Evans Lumber.

Judy Johnson admitted that a check, dated February 9, 1980, written to pay a utility bill, was actually written on February 11, 1980. February 9, 1980, a Saturday, was the last date for payment of the bill at the net rate. Mrs. Johnson testified that when the last date for payment at the net rate falls on Saturday, the penalty can be avoided by dating the check Saturday's date and making payment on Monday. This was her reason for back-dating the check. She also testified that she regularly did this for utility bills that fell due on Saturday. She denied that it was otherwise common practice for her to date checks other than on the date written.

Theodore Evans also testified that he and Mike Goodman talked to Mrs. Johnson after the completion notices were filed and told her they would have to be paid before the closings or they would give notice of liens against the property. Mrs. Johnson denied having any such conversations. She testified that she would have told them to talk to Stan. She wrote checks only at his direction.

He did not recall any conversations in which representatives of Evans Lumber threatened to give notice of a lien unless payment was made. He, of course, realized

that payment would prevent the giving of lien notices, but he denied having any specific agreement with Evans Lumber regarding payment to avoid the giving of lien notices.

The Johnsons filed their petition in bankruptcy on April 25, 1980. Mrs. Johnson testified that at the time of the payments to Evans Lumber, their assets were less than their liabilities.

*Discussion*

The trustee seeks to recover the two payments as preferential transfers under Bankruptcy Code (11 U.S.C.) § 547(b), which provides:

(b) Except as provided in subsection (c) ... the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Subsection 547(f) raises a presumption of insolvency during the 90 days preceding the filing of the bankruptcy petition. "Transfer" is broadly defined in Bankruptcy Code § 101(40).[1]

Evans Lumber Company's main defense was that it gave new value at the time of

---

1. "[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with prop-

erty or with an interest in property, including retention of title as a security interest.

each payment by foregoing its right to perfect a materialman's lien.[2] The parties have hotly contested the question of whether Evans Lumber Company had a perfectable lien at the time of each payment. For the moment, the court assumes that it did, so that other questions raised by the argument can be considered.

Evans Lumber Company relies on § 547(c)(1) which provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

Section 547(a)(2) provides in part:

> "[N]ew value" means ... release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law ....

The definition of new value was meant to continue a rule established under the prior statutes.

> The transfer by a debtor of money or property in total or partial discharge of a valid and non-preferential existing lien on his property, which would not have been disturbed by the bankruptcy proceedings, does not constitute a preference because the assets available for general creditors are not thereby diminished.

3A Collier on Bankruptcy ¶ 60.22 (14th ed. 1977).

Of course, payment to forestall perfection of an unperfected lien on the debtor's property generally did not come within this rule because the perfection itself would have resulted in an avoidable preferential transfer. However, as to materialmen's and mechanics' liens the rule did apply because the creation or perfection of such liens was generally excepted from avoidance as a preferential transfer. In *Greenblatt v. Utley,* the court held that a credit which discharged an inchoate, unperfected mechanic's lien on the debtor's property could not be avoided as a preferential transfer. 240 F.2d 243 (9th Cir.1956). As to the lien's being unperfected, the court referred to Bankruptcy Act § 67b, which excepted the creation or perfection of such liens from avoidance as preferences.

> We do not read sec. 67, sub. b, supra to require that the lien be perfected by filing where, as here, it was discharged by payment at a time prior to the expiration of the permissible filing period.

240 F.2d 247, note 10.

Though the rule is somewhat more difficult to fit to the wording of the present statute, the court does not think the statute was meant to abolish it. Sections 547(c)(6) and § 545 essentially provide that the trustee cannot avoid as a preferential transfer the perfection within the preference period of a true statutory "lien". If the creation or perfection of the lien would not have been avoidable under other statutes, then the lienor is correct in arguing that "the payment merely avoids the bite of a lien which the trustee could not have successfully attacked". *Ricotta v. Burns Coal & Building Supply Company,* 264 F.2d 749 (2d Cir.1959).

As a result, it can be argued that the payment to avoid perfection of the lien either did not diminish the debtor's assets available to pay other creditors or did nor prefer the creditor.

> Transfer by debtor, within 4 months of bankruptcy ... made in discharge of inchoate mechanic's lien may not be avoided by trustee as preference within meaning of former 11 U.S.C. § 96(b); the discharge was present consideration. *Greenblatt v. Utley* (Citation omitted). Among other reasons why such a transfer would not be preferential is the fact that the payments would not enable the credi-

---

**2.** The preference statute provides that a transfer of real property by the debtor is perfected when it is perfected against bona fide purchasers from the debtor. 11 U.S.C. § 547(e)(1)(a).

tor to obtain more than the creditor would obtain in a Chapter 7 liquidation ... since failure to make the payments would simply increase the value of the secured creditor's lien, and the creditor would obtain the value of those payments upon liquidation. (Note, however, that a different result would pertain where the secured creditor is undersecured; an undersecured creditor who receives payments ... is obtaining more than he would receive in a Chapter 7 liquidation to the extent that the payments reduced the unsecured deficiency.)

. . . .

While one might argue that the estate is not necessarily enriched when the debtor obtains new value in exchange for a payment made some days or weeks before bankruptcy, since there is no way to assure that that new value will be preserved and made available to creditors when the case ensues, that argument would apparently be unavailing . . . .

9A Am.Jur.2d, Bankruptcy § 551 at 153–154 (1980).

Though the trustee has made other arguments concerning avoidability and the applicability of the contemporaneous exchange exception, the court turns now to the question of whether at the time of each payment Evans Lumber Company had a perfectable materialman's lien on the property for which the materials were supplied.

The lien given to a materials supplier may last for considerably longer than the 90-day period during which the supplier must file a notice in order to make the lien effective against subsequent good faith purchasers or encumbrancers for value without actual notice of its existence. Tenn.Code Ann. §§ 66–11–102, –11–106, –11–111 & –11–112.[3] The filing statute is relatively clear, however, on the effect of filing after the 90 days has expired.

■ Filing a notice after the 90 days has elapsed does not make the lien effective against any subsequent good faith purchasers or encumbrancers for value and without actual notice of the lien. Unlike some statutes, filing within the stated period is not required solely for the purpose of making perfection of the lien relate back to the time of its attachment. See, e.g., Tenn. Code Ann. (UCC) §§ 47–9–301(2). The statute means that after the 90 days has elapsed, subsequent purchasers or encumbrancers for value and without actual notice take free of any lien for which no notice has been filed. *Brown v. Brown & Co.,* 25 Tenn.App. 509, 160 S.W.2d 431 (1941); see also *Tindell Home Center, Inc. v. Union Peoples Bank,* 543 S.W.2d 843 (Tenn.1976); *Concrete Supply Co. v. Union Peoples Bank,* 540 S.W.2d 250 (Tenn.App. 1976).

The proof showed that work on lot 303 was completed more than 90 days before Evans Lumber Company was paid for the materials. The proof did not show specifically when work on lot 359 was completed, but the payment to Evans Lumber Company was made more than 90 days after it last furnished materials for the lot. Thus, when Evans Lumber was paid as to each lot, the 90-day period for perfection by filing notice with the register of deeds had expired, unless the completion notices stating January 30 as the date of completion somehow gave Evans Lumber an opportunity to perfect its liens.

That is possible only if the completion notices prevent proof that work was actually completed earlier than January 30.[4] In that event, the 90 day period for perfection by filing would not have expired.

■ Generally, a completion notice is only prima facie evidence of the truth of the statements therein, including the completion date, and other evidence is allowed to prove that the work was actually com-

---

**3.** The relevant statutes are quoted in the appendix.

**4.** A completion notice filed or stating a date before the actual completion date cannot be

given effect. *In re Just for the Fun of It Tennessee, Inc.,* 7 B.R. 166 (Bkrtcy.E.D.Tenn.1980) (*First National Bank v. Charles Blalock & Sons, Inc.*).

pleted on another date. This rule, however, must be read with regard to who is allowed to prove another completion date. Certainly a party who acquired, perfected or gave up an interest in the property or other valuable rights in reliance on the true completion date cannot be prejudiced by the statement of an incorrect completion date, but that is not the situation in this case.

The owners filed the completion notices for their benefit and the benefit of the prospective purchasers in making a sale free of any mechanics' or materialmen's liens for which notices were not filed with the register of deeds or given in accordance with the completion notice statute.[5] Certainly the owners are not in a position to deny the stated completion dates. The trustee is not in the position of a person who acquired or lost an interest in the property or other valuable rights in reliance on the true completion dates. Furthermore, it appears to be common practice to state the date of filing of the completion notice as the date of completion. That practice should not be upset by allowing the person who filed the completion notice to prove another date of completion. The court therefore concludes that as a matter of proof, January 30, 1980, was the completion date of work on both lots.

Once the completion notices were filed, however, perfection in the usual sense and by the usual method of filing with the register of deeds became impossible. The statute on notices of completion, Tenn.Code Ann. §§ 66–11–143, provides in part:

(d) Any person claiming a lien for labor or materials upon the property described in the notice of completion who has not previously registered his contract as provided in §§ 66–11–111 or registered a sworn statement as provided in § 66–

11–112 . . . shall send by registered or certified mail written notice addressed to the person, firm or organization and at the address designated in the notice of completion for receiving notice of claims, stating the amount of his claim and certifying that the claim does not include any amount owed to the claimant on any other job or under other contract.

Such written notice shall be timely mailed so as to be received by the addressee not more than ten (10) days after the date of filing of the notice of completion, and if same is not received by the addressee within said time, the lien rights of the claimant shall expire.

■ The statute plainly makes filing with the register of deeds irrelevant to the perfection of the claimant's lien rights once a notice of completion is filed. If the claimant files a sworn statement with the register of deeds after the completion notice is filed but fails to give written notice as required by the statute, the lien itself will expire as to any subsequent good faith purchaser for value and without notice.[6] Thus, Evans Lumber Company cannot successfully argue that it could have perfected its lien within the ten days simply by filing a sworn statement with the register of deeds.

The question, then, is whether at the time of payment Evans Lumber Company could have given the written notice required by the statute. The trustee argued that the time of payment was when the checks were paid against the debtors' checking account. This rule is supported by Bankruptcy Code § 547(e)(1)(B) and § 3–409 of the Uniform Commercial Code chapter on negotiable instruments. Tenn.Code Ann. §§ 47–3–409. See also *In re Mindy's, Inc.*, 17 B.R. 177, 5 C.B.C.2d 1451 (Bkrtcy.S.D.Ohio 1982); (*Carmack v. Zell*). *In re Duffy*, 3 B.R. 263, 1

---

5. Tenn.Code Ann. §§ 66–11–143(b)(5) provides:

The completion notice must include: . . . A statement that a transfer of ownership of all or part of the real property . . . or a settlement of the claims of the parties entitled to the benefits of this chapter will take place not earlier than ten (10) days from the date of filing of the notice of completion.

See also subsection (d), quoted on page ——.

6. Apparently giving notice as required by the statute is not necessary to continue the lien against the owner of the property rather than a good faith purchaser for value and without notice. *Brumit v. Graybeal,* 609 S.W.2d 521 (Tenn.App.1980).

C.B.C.2d 641, 6 B.C.D. 88 (Bkrtcy.S.D.N.Y. 1980). On the other hand, the legislative history of the contemporaneous exchange exception indicates that for its purposes, payment by check should be considered a cash transaction, even though credit is extended until the check is paid. S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978); H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977),[7] U.S.Code Cong. & Admin.News 1978, p. 5787.

The question is when the court should consider the payment to have been made for the purpose of determining whether at that time Evans Lumber Company could have given notice of its lien as required by the statute. The court believes the rule suggested by the legislative history should be the general rule. If the receipt of a check caused the creditor to give new value to the debtor, it is only fair to consider the time the check was received as the time of payment. At least this should be the rule *when the check is not dated later than the day it is received.*

The $2,300.00 check on account of materials furnished for lot 303 was received by Evans Lumber on January 30, 1980, the date of the check and the date of filing of the completion notices. Evans Lumber Company certainly could have mailed the required notice so that Chattanooga Federal would have received it not more than ten days after the completion notice was filed.

The trustee attempted to prove by evidence submitted after the trial that at the time of this payment the debtors' equity in the property was less than the payment. The purpose was to prove that the payment was preferential to the extent it exceeded the equity that could have secured the lien. Evans Lumber Company moved to strike the evidence. The court is of the opinion that the motion should be granted and the evidence excluded. The proof was closed at

the trial without leave granted to introduce additional evidence, particularly evidence that could have been discovered before the trial.

The $8,500.00 payment on account of Lot 359 presents more difficult problems. The check was dated February 11, 1980, the twelfth day after the notice of completion was filed. Evans Lumber Company argued that since the tenth day was a Saturday, it should have had until Monday to give notice. Evans Lumber relies on Rule 6.01 of the Tennessee Rules of Civil Procedure.

In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the date of the act, event or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday, nor a legal holiday . . . .

Though the rule was adopted only to govern procedure in the Tennessee courts,[8] such rules have generally been followed in construing other statutes. See generally 74 Am.Jur.2d, Time § 16 (1974). Evans Lumber might also have relied on Tennessee Code Annotated § 1–3–102, which provides:

The time within which any act provided by law is to be done, shall be computed by excluding the first day and including the last, unless the last day is a Saturday, a Sunday or a legal holiday, and then it shall also be excluded.

The completion-notice statute appears not to allow application of the rule or the statute. Rather than establishing a ten-day period within which the lien-claimant must file or personally serve a notice, the statute requires that the lien notice be received not

---

**7.** "Normally, a check is a credit transaction. However, for purposes of this paragraph, a transfer involving a check is considered to be 'intended to be contemporaneous' and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–

503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

**8.** "[T]hese rules shall govern the procedure in the circuit and chancery courts of Tennessee . . . ." Tenn.R.Civ.Proc. 1.

more than ten days after the completion notice was filed. This puts the burden on the lien claimant to mail the notice so that it will be received within the allotted time. The lien claimant must take into account days when the mail is not delivered and still allow time enough for delivery before the ten days expires.

Moreover, subsection (b)(5) of the statute, quoted in footnote 5, apparently means that on the eleventh day after the completion notice is filed, the property can be sold free of any unregistered liens for which written notice has not been received, regardless of how many weekend days or holidays have intervened since filing of the completion notice. Thus, on February 11, 1980, Evans Lumber Company could not possibly have perfected its lien by giving notice within the time allowed by the statute.

As a practical matter, a lien claimant in a situation like this can probably obtain payment from the buyer's lender by giving it notice any time before the sale is closed. The buyer will obviously prefer payment as a more definite method of disposing of possible lien claims than reliance on the statutes. The seller cannot complain that his creditors are being paid with money he would otherwise receive, especially if he has already executed an affidavit that all suppliers have been paid.

Evans Lumber Company's argument depends, however, on the existence of a lien. Without such a lien, Evans Lumber did not give up any new value in return for the payment.

Evans Lumber Company attempted to prove that the check was written and delivered on February 8, but was postdated to February 11. Even if delivery on the eighth were proved, it would not help Evans Lumber Company. A creditor who receives a post-dated check cannot treat it as a cash payment. Tenn.Code Ann. § 47–3–114(2); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 17–3 at 659–661 (2d ed. 1980). Thus, Evans Lumber Company was paid on the eleventh, when its lien rights had expired. It did not give up any new value at the time of payment.

The trustee also argued that the contemporaneous exchange exception does not apply because the parties, or at least the debtors, did not *intend* a contemporaneous exchange for new value. The court believes the $2,300.00 payment is protected from avoidance as a preference without regard to whether the parties specifically agreed that the payment was in exchange for Evans Lumber Company's forbearance from perfecting its lien. The payment is protected because it did not cause a diminution of the debtors' assets available to pay other creditors or did not prefer Evans Lumber Company. Of course, the definition of "new value" is useable in determining whether or not a transfer resulted in a diminution of the debtors' assets. It largely adopts the rules established under the prior preference statute.

As to the $8,500.00 payment there remains the question of whether all the requirements of § 547(b) are met. It appears that they are. Evans Lumber Company made only one argument to the contrary that needs to be considered. It argued that the debtors held the proceeds from the sale of the property in trust to pay them and so the payment was not made with property of the debtors. Assuming the check was paid against deposits from the sale of lot 359, the argument still must fail. The statutes in Tennessee by themselves do not make construction proceeds paid to the builder trust funds to pay the builder's creditors. See *In re Cedar City Elevator and Refrigeration Co.,* 14 B.R. 623 (Bkrtcy.M.D.Tenn.1981) (*Noland Co. v. Edmondson*); *Sequatchie Concrete Service, Inc. v. Cutter Laboratories,* 616 S.W.2d 162 (Tenn.App.1980).

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.

## APPENDIX

The following provisions of the Tennessee Code Annotated are relevant to the court's decision. Section 66–11–102 provides:

(a) There shall be a lien upon any ground . . . upon which a house or structure has been erected . . . by special contract with the owner . . . in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or any part of the work, or furnishes the materials or any part of the materials, or puts thereon any fixtures, machinery, or materal, and in favor of all persons who do any portion of the work or furnish any portion of the materials for such building.

Section 66–11–104 provides:

(a) Such lien shall take effect from the visible commencement of operations, excluding however, demolition, surveying, excavating, clearing, filling or grading and the delivery of materials therefor.

Section 66–11–106 provides:

The lien shall include the building, structure, fixture, or improvement as well as the lot or land, and continue for one (1) year after the work is finished or materials are furnished, and until the final decision of any suit that may be brought within that time for its enforcement.

Section 66–11–111 provides:

Where the contract is in writing, by virtue of which real property is so improved, it may be acknowledged . . . and recorded in the lien book in the register's office in the county where the premises . . . are situated. Such registration shall be noticed [sic] to all persons of the existence of such lien, provided it sets forth the contract price and describes the real estate to be affected with reasonable certainty.

Section 66–11–112 provides:

In order to preserve the virtue of the lien, as concerns subsequent purchasers or encumbrancers for a valuable consideration without notice thereof, though not as concerns the owner, such lienor, who has not so registered his contract, is required to file for record in the office of the register of deeds of the county where the premises, or any part affected lies, a sworn statement . . . the register to file, note and record same . . . . Such filing

for recorder is required to be done within ninety (90) days after the building or structure or improvement is . . . completed . . . or the contract of the lienor expires or is terminated or he is discharged, prior to which time the lien shall be effective as against such purchasers or encumbrancers without such registration.