**In the Matter of ADVANCED CONTRACTORS, Debtor.**

**R. Edward COOLEY, Plaintiff,**

**v.**

**GENERAL ELEVATOR CORP., Defendant.**

**Bankruptcy No. 82-1280 Orl AP. Adv. No. 83-945.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 27, 1984.

R. Edward Cooley, Orlando, Fla., for plaintiff.

Denis L. Durkin, Orlando, Fla., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a Complaint filed by R. Edward Cooley, the

Trustee representing the estate of Advanced Contractors, Inc., a Debtor currently involved in a Chapter 7 liquidation case. The complaint sets forth a claim for a voidable preference pursuant to § 547 of the Bankruptcy Code and seeks to recover a payment in the amount of $51,420.52 made by the Debtor within 90 days of the Petition to the Defendant, General Elevator Corp. (General) Inasmuch as the matter was submitted for this Court's consideration on stipulated facts, and it is agreed by General that all operative elements of a voidable preference have been established based on the undisputed facts, the only matters remaining for consideration are the defenses asserted by the Defendant. The facts as they appear from the stipulation submitted by the parties and also by the depositions introduced into evidence can be briefly summarized as follows:

On October 3, 1980, the Debtor and General entered into a construction subcontract in connection with a project known as Trinity Towers South, located at 615 New Haven Avenue, Melbourne, Florida. The subcontract provided for the sale, installation and construction of elevators. The Trinity Towers South project was bonded pursuant to a payment and performance bond issued by Seaboard Surety Corporation as surety and Trinity Towers South, Inc. as Obligee, in the approximate amount of $3,469,000.

General installed the elevators and billed the Debtor in accordance with the terms of the subcontract. As the work progressed, General billed the Debtor by invoice, and considered the payment due upon mailing the invoice. The Debtor timely paid all invoices until August 1981. Thereafter, General sent the following Invoices: Invoice No. 102524 (Exh. No. 1) in the amount of $10,263.60, dated August 21, 1984; Invoice No. 105346 (Exh. No. 2) in the amount of $13,678.07, dated September 29, 1981; Invoice No. 110127 (Exh. No. 3) in the amount of $16,831.08, dated December 21, 1981; Invoice No. 110306 (Exh. No. 4) dated January 4, 1982; and, Invoice No. 114923 (Exh. No. 5) in the amount of $525.00 dated April 2, 1982. The Debtor did not pay any of the invoices listed above and, therefore, was in default under the terms of the subcontract executed on October 3, 1980.

General advised the Debtor that it considered the contract to be in default and refused to perform any further work on the project despite the fact that the elevator work had not been completed. The parties agree that as a result of the default, General was under no obligation to perform additional work.

On April 16, 1982, the Debtor paid to General the sum of $51,438.52, in satisfaction of the claims due under the contract and in payment of the sums due under the invoices identified as Exhibits 1 through 5. General, then, completed all the work necessary to obtain a satisfactory state inspection of the elevator system. General deposited the Debtor's check on or about April 19, 1982. Both parties agree that General would not have completed performance absent the payment of the sums due and owing.

At the time of the default, General had preserved its mechanic's lien right and its right of action against the bond pursuant to § 713.06 and § 713.23 Fla.Stat. by timely filing a notice to Owner dated November 14, 1980 (Exh. No. 6) and a Preliminary Notice to Contractor dated November 14, 1980 (Exh. No. 7). However, upon acceptance of the $51,438.52 payment on April 16, 1982, General abandoned its lien rights, did not file suit on the payment bond, and has made no demand on nor recovered any sums from the surety.

On June 24, 1982 an involuntary petition in Bankruptcy was filed against the Debtor, and on August 25, 1982, the Court entered an Order for Relief pursuant to § 303 of the Bankruptcy Code. There is no doubt that the payment by the Debtor to General occurred within the ninety (90) days of the filing of the petition and that the payment satisfied an antecedent debt while the Debtor was insolvent. However, it is General's position that the payment does not constitute a voidable preference,

but is excepted from the preference provision by § 547(c)(1) because the payment was supported by present consideration which represents new value to the Debtor, that is, the abandonment of statutory lien rights and a right of direct action against the surety for which the Debtor is ultimately liable. *See* 11 U.S.C. § 547(c)(1). Of course, § 547(c)(1) excepts a transfer from avoidance by the Trustee and provides as follows:

§ 547 Preferences

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

■ In the instant case, the Court must consider whether the abandonment of the right of direct action as against a third party constitutes present consideration which represents "new value" to the debtor as contemplated by § 547(c)(1) of the Bankruptcy Code. This Court is satisfied that the question must be answered in the affirmative for the following reasons:

■ Under the law of Florida, a subcontractor or materialman may preserve his lien right and his direct right of action against a surety, if the project is bonded, by timely serving a proper notice pursuant to §§ 713.06 and 713.23 Fla.Stat. In order to perfect a mechanic's lien which attached to the improved property, the lienor must then record a claim of lien, "... not later than ninety days after the final furnishing of labor or services or materials by the lienor; ..." § 713.08(5) Fla.Stat. In the event that the project is bonded, the bond secures every lien under the construction contract which accrues after the execution and delivery of the bond (except that of the contractor) and, every claim of lien filed by a subcontractor, after the execution and delivery of the bond is transferred to and secured by the bond. § 713.23(2) Fla.Stat.;

*Coordinated Constructors v. Florida Fill, Inc.*, 387 So.2d 1006 (Fla.3d DCA 1980). Accordingly, to recover on the bond, the lienor must then commence an action against the contractor or surety on the bond within one year from the performance of the labor or completion of the delivery of materials or supplies. § 713.23(1)(f) Fla. Stat. The effect of a payment bond is to exempt the owner's property from lien foreclosure and to substitute the security of a bond. *Coordinated Constructors v. Florida Fill, Inc.*, 387 So.2d at 1008 citing *Guin & Hunt, Inc. v. Hughes Supply, Inc.* 335 So.2d 842 (Fla. 4th DCA 1976). However, the fact that a contractor obtains a payment and/or performance bond in no way alters the statutory protections accorded to materialmen, subcontractors or laborors if the lienor strictly complies with the statutory requirements i.e., notice; perfection, etc.

In this case, General preserved its lien rights by timely filing its notices pursuant to §§ 713.06 and 713.23 Fla.Stat. However, prior to the expiration of the period in which General could (1) properly perfect its lien by filing a claim of lien, or (2) file suit on the bond, the Debtor paid the amounts due and General, in effect, released its security.

■ This Court is satisfied that the payment of the debt and the simultaneous release of the security by General which occurred within the 90 day preference period represents a contemporaneous exchange for new value. *See Mullins v. Noland Company*, 406 F.Supp. 206 (N.D.Ga.1975); *In re Johnson*, 25 B.R. 889 (Bankr.E.D. Tenn.1982); *In re Dick Henley, Inc.*, 38 B.R. 210 (Bankr.M.D.La.1984). However, the question remains whether the abandonment of the lien secured by the bond represents new value *to the Debtor* within the meaning of § 547(c)(1).

This question was recently addressed by the Bankruptcy Court in the Middle District of Louisiana in the case of *In re Dick Henley, Inc., supra*. Upon similar facts, the Court concluded that although in re-

turn for payment by the Debtor (Contractor), the creditor released its lien rights against the third party owner, the release to the third party owner operated as a "constructive" release to the Debtor of his obligation to indemnify the owner. Thus, the cancellation of the Debtor's obligation to indemnify constituted new value to the Debtor, thereby satisfying the requirements of § 547(c)(1). *In re Dick Henley, Inc.*, 38 B.R. at 215.

There is no doubt that at the time of payment, General possessed an incohate lien right which was capable of being perfected and, if properly perfected, was unassailable as a preference by the Trustee. It is unreasonable to conclude that a Debtor can pay a materialman or subcontractor within the preference period in return for the relinquishment of his mechanics lien or right of action on a bond, and then merely wait until the state law remedies are time barred to attack the payments as preferential transfers.

Based on the foregoing this Court is satisfied that the Debtor's payment of $51,-420.52 to General Elevator Corporation does not constitute a preferential transfer subject to avoidance pursuant to § 547(b) of the Bankruptcy Code.

A separate final judgment shall be entered in accordance with the foregoing.