**CIMMARON OIL COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**CAMERON CONSULTANTS, INC.,**
**Defendant-Appellee.**

**Civ. A. No. CA3–86–1644–D.**

United States District Court,
N.D. Texas,
Dallas Division.

April 13, 1987.

Herbert J. Gilles and Linda N. Coffee, Palmer, Palmer & Coffee, P.C., Dallas, Tex., for plaintiff-appellant.

S. Gary Werley of Bishop, Payne, Lasmens & Brown, Fort Worth, Tex., for defendant-appellee.

## OPINION

FITZWATER, District Judge.

Appellant, Cimmaron Oil Company, Inc. ("Cimmaron"), a chapter 11 debtor, appeals from a summary judgment denying its attempt to avoid two pre-petition payments as being 11 U.S.C. § 547(b) preferences. The creditor, Cameron Consultants, Inc. ("Consultants"), successfully urged in the bankruptcy court the affirmative defense that it had substantially and contemporaneously exchanged new value within the meaning of 11 U.S.C. § 547(c)(1) by accepting the payments and thus giving up its right to perfect statutory liens on two Cimmaron oil and gas wells.

The question on appeal is whether payments made to a lien creditor during the preference period, which result in the creditor's taking no affirmative steps to perfect its statutory lien rights, are avoidable pursuant to § 547(b). Although this court takes a different analytical path than that traveled by the bankruptcy court, it nevertheless concludes that the court below reached the correct result. Accordingly, the order of the bankruptcy court granting summary judgment is AFFIRMED.

## I.

### BACKGROUND

The material[1] facts are substantially undisputed. Since 1978, Cimmaron has been in oil and gas exploration, development, and production. At the time in question, Cimmaron owned and operated two wells in Hood County, Texas. On December 18, 1980, January 31, 1981, and February 3, 1981, Consultants provided field office geological services to Cimmaron in relation to the two wells. On January 26, February 19, and February 26, 1981, Consultants sent statements to Cimmaron detailing the nature of the services performed. On March 31, 1981, Cimmaron issued a check to Consultants in the amount of $7,548.20 in payment for the January 26 and February 19 invoices. The check cleared on April 15, 1981. On April 2, 1981, Cimmaron is-

---

1. Pursuant to Fed.R.Bankr.P. 7056, the Fed.R. Civ.P. 56 summary judgment standard applies in adversary proceedings. This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

sued a check to Consultants in the amount of $1,325.00 in payment of the February 26 invoice. The check cleared on April 16, 1981. On July 10, 1981, Cimmaron filed for chapter 11 protection. The payments were thus transfers made within 90 days prior to Cimmaron's filing for bankruptcy protection under chapter 11. Cimmaron was presumed under the Bankruptcy Code to be insolvent[2] during the 90–day period.

Prior to accepting payment for its services, Consultants undertook no affirmative efforts to perfect liens on either well. Upon accepting payment for services, Consultants did not relinquish or actually release a notice of lien or existing lien.

In February 1985, Cimmaron commenced an adversary proceeding against Consultants and several other creditors to avoid certain payments as being preferential transfers or unauthorized post-petition transfers. In the proceeding Cimmaron sought to avoid the $7,548.20 and $1,325.00 payments to Consultants.[3] In due course the parties filed motions for summary judgment. On the basis of § 547(c)(1), the bankruptcy court held in favor of Consultants. The court concluded that the transfer of money to Consultants was intended by the parties to be a contemporaneous exchange for new value and was in fact a substantial contemporaneous exchange because, on receipt of payment, Consultants gave up its right to file liens on the wells. The bankruptcy court thus concluded that the $7,548.20 and $1,325.00 payments to Consultants could not be avoided under § 547(b).[4] From this order granting summary judgment Cimmaron appeals.

## II.

## DISCUSSION

The question presented by this appeal has not yet been decided by the Fifth Circuit. The courts that have decided the question are split. Some courts[5] have construed § 547(c)(1) as did the court below, while others[6] have reached the opposite conclusion. This court's review of the applicable decisions and of the Code provisions in question leads it to hold that § 547(c)(1) does not exempt payments to lien creditors from avoidance under § 547(b). The court does conclude, however, that such payments are excepted from avoidance pursuant to § 547(c)(6).

2. In its brief Consultants disputes the presumption that Cimmaron was insolvent at the time it paid Consultants. (Appellee Br. at 4, 15). The bankruptcy court did not address the issue in granting summary judgment. Because the court affirms the bankruptcy court on the basis of an exception to § 547(b), the court does not reach the question whether the elements of § 547(b), including § (b) (3), were satisfied.

3. In their briefs the parties appear to focus only upon the $7,548.20 check. (Appellant Br. at 11) (Appellee Br. at 14). However, both the $7,548.20 and the $1,325.00 checks were paid within the 90–day preference period and the take nothing summary judgment in favor of Consultants is equally applicable to both checks.

4. The bankruptcy court held:
This Court finds that the transfer of money to Cameron Consultants was intended by the Debtor and the creditor to be a contemporaneous exchange for new value to the Debtor and was in fact a substantial contemporaneous exchange, in that Cameron Consultants, on payment, gave up its right to file valid oil and gas liens.

5. These courts have held, under the new Bankruptcy Code, that payments to relinquish a statutory lien constitute new value and that the payments are therefore not avoidable as preferences: Matter of Anderson Plumbing Co., 71 B.R. 19, 20 (Bankr.E.D.Cal.1986); In re Mason and Dixon Lines, 65 B.R. 973, 978–979 (Bankr. M.D.N.C.1986); In re Advanced Contractors, 44 B.R. 239, 241 (Bankr.M.D.Fla.1984); In re Dick Henley, Inc., 38 B.R. 210, 213 (Bankr.M.D.La. 1984); In re Johnson, 25 B.R. 889, 892–894 (Bankr.E.D.Tenn.1982).

6. These courts have held, under the new Bankruptcy Code, that payments to relinquish a statutory lien do not constitute new value and that the payments are thus avoidable as preferences: In re Fuel Oil Supply and Terminaling, Inc., 72 B.R. 752 (S.D.Tex.1987); Matter of Control Electric, Inc., 66 B.R. 624, 626–627 (Bankr. N.D.Ga.1986); In re Georgia Steel, 56 B.R. 509, 522 (Bankr.M.D.Ga.1985); In re George Rodman, 39 B.R. 855, 858 (Bankr.W.D.Okla.1984). See also In re Ken Gardner Ford Sales, Inc., 23 B.R. 743, 747 (Bankr.E.D.Tenn.1982) (holding apparently limited to facts of case).

## A. Section 547(c)(1)

Section 547(b) [7] authorizes the trustee to avoid certain transfers as preferences and prescribes the elements that must be satisfied in order to maintain a successful preference action. Section 547(b) is subject to six exceptions set forth in § 547(c). As noted, the exception on which the bankruptcy court based its judgment is contained in § 547(c)(1), which provides:

> The trustee may not avoid under this section a transfer—
>
>> (1) to the extent that such transfer was
>>
>>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>>
>>> (B) in fact a substantially contemporaneous exchange[.]

To come within the § 547(c)(1) exception there are three elements that must be satisfied: (1) the creditor must extend new value to the debtor; (2) both the creditor and the debtor must intend the new value and reciprocal transfer to be contemporaneous; and (3) the exchange must in fact be contemporaneous. *Matter of Georgia Steel, Inc.*, 56 B.R. 509, 521 (Bankr.M.D. Ga.1985). The bankruptcy court concluded from the summary judgment record that Consultants and Cimmaron had intended that the payments to Consultants be contemporaneous exchanges for new value given to the debtor and that, in fact, substantially contemporaneous exchanges occurred.

On appeal, Cimmaron challenges the bankruptcy court's legal conclusion that

Consultants exchanged new value merely by accepting payments and giving up the right to perfect its statutory liens without undertaking any affirmative steps to perfect its liens or to relinquish or actually release a notice of lien or existing lien. Cimmaron reasons that Consultants had only an inchoate lien right that did not vest because Cimmaron paid Consultants for its services; absent any vesting through perfecting under Texas law, the inchoate lien right did not constitute any "value" and therefore could not be "new value" within the meaning of § 547(c)(1).

Consultants contends that the lien right was not inchoate because it took effect the day Consultants performed the work. Consultants argues that under Texas law it had six months from the date the work was performed to perfect the lien and that timely filing related back to the date the work was done. TEX.REV.CIV.STAT.ANN. art. 5473, which was the operative statute in 1981, and which has since been re-codified,[8] provided that any contractor who performed under contract with the owner of an oil and gas interest in land shall have a lien on the land or leasehold interest therein. Article 5476b provided that the indebtedness was deemed to have accrued at the date of the last delivery of the material or services provided. Once the lien was perfected it related back to the date of inception of the lien.

Based upon this interpretation of Texas law, Consultants contends that its liens on the two wells existed at the time it was paid and that, had it not been paid, the liens

---

**7.** In 1981, the time of the payments in question, § 547(b) provided, in pertinent part:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
>> (1) to or for the benefit of a creditor;
>>
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>>
>> (3) made while the debtor was insolvent;
>>
>> (4) made—
>>
>>> (A) on or within 90 days before the date of the filing of the petition;
>>>
>>> \* \* \* \* \* \*
>>
>> (5) that enables such creditor to receive more than such creditor would receive if—

>>> (A) the case were a case under chapter 7 of this title;
>>>
>>> (B) the transfer had not been made; and
>>>
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> Section 547(b)(1) was subsequently amended by § 462(b)(1) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, § 462(b)(1).

**8.** TEX.REV.CIV.STAT.ANN. arts. 5473 *et seq.* have been repealed and are now contained, without substantive change, in Chapter 56 of the Texas Property Code, which took effect January 1, 1984.

could have been perfected and would have related back to the respective dates on which the work was performed. This would have given Consultants a secured interest in the wells. However, after Consultants was paid, it was then unable to perfect its liens because, as a matter of law, they no longer existed. For these reasons Consultants argues that the payments rendered it unable to file oil and gas liens and thus constituted the transfer of "new value."

The court concludes that Congress did not intend the § 547(c)(1) exception to apply to the facts presented in the instant case.

■ The court begins the process of statutory interpretation, as it must, with the language of the statute itself. *United States v. James*, — U.S. —, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) (starting point in statutory interpretation is the language of the statute itself). The exception applies to contemporaneous exchanges for "new value." In the form extant at the time of the payments in question, § 547(a)(2) defined "new value" as

> ... money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation[.] [9]

This court concludes that forgoing, by operation of law, the right to perfect a lien is not the exchanging of "new value" with the debtor because it is not money or money's worth in goods, services, or new credit, nor is it a release of property by the lienor that has previously been transferred to the lienor. Congress carefully defined "new value" in § 547(a)(2). *Matter of Georgia Steel, Inc.*, 56 B.R. at 522. The term includes goods, or the value of them, or the release of property previously transferred.

*In re Fuel Oil Supply and Terminaling, Inc.*, 72 B.R. 752, 758 (S.D.Tex.1987). The waiver of an inchoate lien right does not fit within the definition of "new value" as set forth by Congress. *Matter of Georgia Steel, Inc.*, 56 B.R. at 522.

As the court held in *Fuel Oil Supply*, to reason that the list of what constitutes "new value" is not exclusive is to ignore the wording of the bankruptcy statute. Congress apparently meant a precise definition when it listed what constitutes new value. Congress could have allowed courts to expand upon the doctrine of new value by legislating that new value *includes* certain transactions. Instead, Congress stated what new value *means*, which should retard case law expansion. 72 B.R. at 758, *citing* 2 Collier on Bankruptcy ¶ 101.00(2) (15th ed. 1987).

Where, as here, the plain language of the statute appears to settle the question, the court will look to the legislative history only to determine whether there is a clearly expressed legislative intention, contrary to that language, which would require the court to question the strong presumption that Congress expresses its intent through the language it chooses. *Immigration and Naturalization Service v. Cardoza-Fonseca*, — U.S. —, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). In this case the legislative history, while not a paradigm of clarity, nevertheless reflects the intent of Congress that the § (c)(1) exception be of limited reach. The example that the Senate and House Reports give as reflecting the purpose for § (c)(1) demonstrates that Congress did not intend that the exception apply to facts such as those presented by this appeal. The Reports each state, in pertinent part:

> Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous", and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial

---

**9.** The legislative history to § 547 adds to this definition only to the extent that it states that new value is defined in its "ordinary sense" and in such a manner as to "avoid any confusion or uncertainty" surrounding the term. S.Rep. No. 989, 95th Cong., 2d Sess. 87, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5873; H.R. Rep. No. 595, 95th Cong., 1st Sess. 372, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6328.

Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5874; H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6329.

The courts that have decided the question as did the bankruptcy court below appear to have been concerned that a contrary interpretation of § 547(c)(1) would effectively penalize a lien creditor for accepting payment rather than refusing payment and enforcing its lien, which obviously is an unreasonable commercial practice. *See A.L. Mullins, Jr. v. Noland Company*, 406 F.Supp. 206, 214 (N.D.Ga.1975) (decision under former Bankruptcy Act) (such a result would compel potential lienors to forgo reasonable commercial practice in favor of insisting on enforcement of lien rights thereby creating unnecessary and expensive impediment to prompt settlement of contracts). The Second Circuit observed in *Ricotta v. Burns Coal & Building Supply Co.:*

> Surely receipt of payment itself should not be less secure than the lien which could have secured it.

264 F.2d 749, 750–751 (2d Cir.1959) (decision under former Bankruptcy Act).

In *In re Dick Henley, Inc.*, 38 B.R. 210, 215 (Bankr.M.D.La.1984), the court reasoned that a debtor could avoid compensating its creditors (in this case its subcontractors) by paying them during the preference period after substantial completion of their work and then simply waiting until after the expiration of the lien under applicable state law before filing an action to recover a preference. The creditor would thereby effectively be denied its lien rights. *Id.* Citing *Dick Henley*, the court held in *Matter of Advanced Contractors*, 44 B.R. 239, 242 (Bankr.M.D.Fla.1984):

> It is unreasonable to conclude that a Debtor can pay a materialman or subcontractor within the preference period in return for the relinquishment of his mechanics lien or right of action on a bond,

and then merely wait until the state law remedies are time barred to attack the payments as preferential transfers.

Fortunately, principled statutory interpretation does not require an undesirable result in today's case. In another exception to the avoiding powers of the trustee, Congress has dealt with the concern articulated by the courts.

### B. Section 547(c)(6)

Section 547(c)(6) provides that the trustee may not avoid a transfer under § 547 "that is the fixing of a statutory lien that is not avoidable under section 545 of this title." Sections 547(c)(6) and 545 essentially provide that the trustee cannot avoid as a preferential transfer the perfection within the preference period of a true statutory lien. *In re Johnson*, 25 B.R. 889, 893 (Bankr.E.D.Tenn.1982).

Although the language of § 547(c)(6) arguably applies only to the *fixing* of a lien, the legislative history reflects Congress' intent that § (c)(6) also exempt from the trustee's avoiding power "transfers in satisfaction of such liens." S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5874; H.R.Rep. No. 595, 95th Cong., 1st Sess. 374, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6330. The court construes Congress' intent to include, in addition, transfers that preclude imposition of such liens. *See In re White*, 64 B.R. 843, 851 (Bankr.E.D.Tenn.1986) (under § (c)(6), attachment or perfection of statutory lien during preference period is not avoidable, thus, payment to prevent attachment or perfection of statutory lien may not be avoidable).

Section 67(b) of the former Bankruptcy Act was similarly interpreted by the courts. In *Ricotta v. Burns Coal & Building Supply Co.*, the Second Circuit reasoned that if the creation or perfection of a lien would not have been avoidable under other statutes, then payments which merely avoid the bite of a lien which the trustee could not have successfully attacked should likewise not be avoidable. 264 F.2d at 751. *Accord, Greenblatt v. Utley*, 240 F.2d 243,

247 and n. 10 (9th Cir.1956) (credit which discharged unperfected mechanic's lien on debtor's property could not be avoided as a preference). Although the rule is somewhat more difficult to fit in § 547(c)(6) than in former § 67(b), § 547(c)(6) was not intended to abolish the rule. *In re Johnson,* 25 B.R. at 893.

This interpretation of § 547(c)(6), while faithful to congressional intent, obviates the commercially unreasonable consequences that could result if the trustee were permitted to pay for a lienor's services, thereby precluding the perfecting of the lien, and later avoid the payments as preferences. It is also consonant with the Code's intent in granting avoidance power to the trustee.

A preference, of course, is any transfer of a bankrupt's property within a prescribed period of time while the bankrupt is insolvent if its effect is to enable one creditor to obtain a greater percentage of his debt than other creditors of the same class. *In re Roscar Steel Scrap and Metals Corp.,* 12 B.R. 629, 633 (S.D.N.Y.1981). The essence of a preference is that it depletes or diminishes the estate of the bankrupt that is available for distribution to the other creditors. *Thomas v. Gulfway Shopping Center, Inc.,* 320 F.Supp. 756, 762 (S.D.Tex.1970). The basic goal of the Code with respect to preferences is to secure equal distribution of the debtor's assets among his creditors, *Matter of Kennesaw Mint, Inc.,* 32 B.R. 799, 805 (Bankr.N.D.Ga. 1983), and to prevent favoritism. *Matter of C.S. Mersick & Co.,* 1 B.R. 599, 601 (Bankr.D.Conn.1979).[10]

A transfer of property does not constitute a preference, however, unless the transfer enables a creditor to receive more than such creditor would receive if the case were a chapter 7 case, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of Title 11. 11 U.S.C. § 547(b)(5). Section 547(c)(6), as interpret-

ed by the court today, does not permit the lien creditor to obtain from the debtor any greater interest than the creditor would otherwise have realized. *See In re Johnson,* 25 B.R. at 893–894. In the instant case, had Cimmaron not paid Consultants, Consultants could have enforced its statutory oil and gas liens.[11]

### III.

Although the court differs with the bankruptcy court's reasoning, it nevertheless concludes that the bankruptcy court correctly granted summary judgment in favor of Consultants. In its capacity as an appellate court, this court may affirm a correct judgment for reasons not given by the court below or advanced to it. *See Laird v. Shell Oil Co.,* 770 F.2d 508, 511 (5th Cir.1985); and *American Training Services, Inc. v. Veterans Administration,* 434 F.Supp. 988, 993 (D.N.J.1977) (correct result of bankruptcy court, even though based upon ground which is inappropriate or unnecessary to the decision, will be affirmed). Accordingly, the judgment appealed from is

AFFIRMED.

---

**10.** The preference provision is also intended to discourage creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy. *In re Balducci Oil Co., Inc.,* 33 B.R. 843, 845 (Bankr.D.Colo.1983).

**11.** The oil and gas liens in question are not avoidable pursuant to 11 U.S.C. § 545.