In re Norman W. COMPTON dba Compton Builders (Husband) Martha S. Compton, Debtors.

William L. LANCASTER, III, trustee, Plaintiff,

v.

MORRISTOWN BLOCK & CONCRETE PRODUCTS, Defendant.

Bankruptcy No. 3–84–01430.
Adv. No. 3–85–0997.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 15, 1985.

Margaret B. Fugate, Johnson City, Tenn., for plaintiff.

Frank P. Cantwell, Jr., Morristown, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

This is a preference action commenced by the trustee under § 547(b)[1] of the Bankruptcy Code to recover $2,000 from the defendant Morristown Block and Concrete Products Co.

## I

Prior to filing bankruptcy the debtor was a construction contractor. The testimony of the debtor and of the defendant's president, Robert Ivens, was essentially identical regarding the course of business between the parties. From the time the debtor first began purchasing concrete products from defendant (in 1980) until the time of the transactions in question the debtor kept a "running account" with defendant. Payments by the debtor were customarily applied to the oldest invoices constituting the debtor's outstanding debt.[2]

As of May 1984, however, debtor's unpaid account was $2,772.16. When he approached defendant regarding further purchases, defendant expressed concern about the existing, unpaid balance. Defendant wanted to receive payment upon delivery for any further purchases. Debtor indi-cated he would be unable to pay for the block upon delivery, but that he would pay defendant with the proceeds of his "first draw" on the two houses for which he needed the block. Defendant agreed to this arrangement. (The parties further agreed that debtor would subsequently pay off the older, previously outstanding balance from the "sale proceeds" debtor anticipated receiving when the two houses were completed and sold.)

Defendant delivered materials to debtor on May 17, 1984, and May 24, 1984. Debtor later received his "draw" on the two houses, deposited the funds in his "construction account," and subsequently made the subject payment out of this account.

The parties have stipulated (1) that defendant furnished to the debtor $1,906.69 in materials on May 17, 1984,[3] and $1,845.11 in materials on May 24, 1984, (2) that the debtor paid $2,000 to defendant by a check dated June 21, 1984, (3) that the check was delivered to defendant on June 28, 1985, and (4) that the check was honored by the debtor's bank on July 3, 1985. The bankruptcy petition was filed on September 5, 1984.

## II

The question is whether the $2,000 payment comes within the § 547(c)(2)[4] "ordi-

---

1. Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or

   .  .  .  .  .

   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
   11 U.S.C.A. § 547(b) (West 1979).

2. This was the manner in which a $2,000 payment was applied on April 2, 1984, (the last payment made by the debtor before the payment here in question).

3. Ivens testified that the dates on the invoices reflected the date the materials were delivered.

4. The trustee may not avoid under this section a transfer—

   .  .  .  .  .

   (2) to the extent that such transfer was—
   (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
   (B) made not later than 45 days after such debt was incurred;
   (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
   (D) made according to ordinary business terms. . . .

nary course of business" exception. The check was delivered within 45 days after the furnishing of $1,906.69 in materials on May 17, 1984. However, it was not honored by the debtor's bank until after the 45–day period. The decisive issue, then, is whether for purposes of § 547(c)(2) the transfer by check was made when the check was delivered (within the 45–day period) or when it was honored (outside the 45–day period).[5]

There is a split of authority on this question. *Compare O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 38 (1st Cir.1984) ("the date of delivery of the checks was the date of transfer for the purpose of section 547(c)(2)") *with Grogan v. Chesebrough-Ponds, Inc. (In re Advance Glove Manufacturing Co.)*, 25 B.R. 521 (Bankr.E.D. Mich.1982) (date check was honored was date of transfer for purposes of § 547(c)(2) exception).

In *Dickenson v. Owens-Corning Fiberglas Corporation (In re Insulation Materials, Inc.)*, 47 B.R. 832 (Bankr.E.D.Tenn. 1985) this court held that for purposes of determining whether a transfer by check occurred within the 90–day preferential period under § 547(b), the controlling date for establishing the time of transfer was the date the check was honored.

However, that decision does not control the result here. In *Remes v. Acme Carton Corporation (In re Fasano/Harriss Pie Company)*, 43 B.R. 871 (Bankr.W.D.Mich. 1984) the court concluded that the date of honor of a check controlled for purposes of § 547(b) while the date of delivery of the check controlled for purposes of § 547(c)(2). This court has reached the same conclusion.

The cases cited above make amply clear the interpretative difficulties inherent in the statute and the legislative history. This court will not here needlessly reiterate them. As the court in *Remes v. Acme Carton Corporation* observed:

> Where neither the statute nor legislative history clearly indicate Congressional intent, a court should be guided by policy considerations underlying the paragraph in question. Section 547(c)(1), (c)(2) and (c)(4) are all designed to encourage creditors to deal with a failing business and to protect ordinary business transactions. Viewing the transfer of a

---

11 U.S.C.A. § 547(c)(2) (West 1979).

**5.** It is clear that the $2,000 check was in payment of the May purchases rather than in payment of the older, outstanding account balance. Regardless of the parties' previous policy, the debtor at the very least had the *right* —if not the duty—to direct that the proceeds of the "draw" on this project be applied to pay the debt for materials purchased for use in this specific project. *See Hammer-Johnson Supply, Inc. v. Curtis*, 51 Tenn.App. 72, 364 S.W.2d 496 (1962) (contractor who initially misapplied funds loaned for one project to pay debts on another project could subsequently direct that payment be properly credited to project on which loan was made); *Bain-Nicodemus, Inc. v. Bethay*, 40 Tenn.App. 487, 292 S.W.2d 234 (1953) (where materialman, to whom contractor owed several accounts, knew that amount which contractor paid materialman was received by contractor from a particular contractee, materialman was required to credit contractor's account so as to discharge, to extent of payment, materialman's lien against contractee's property). *See also United States v. Beck*, 151 F.2d 964, 966 (6th Cir.1945) ("It is ... the general rule that where a debtor owes more than one matured contractual duty to the same person ... the debtor may

have his payments applied to any one of his matured obligations as he sees fit ... [but] if he is under a duty to a third person to devote the money to the discharge of a particular debt, and the creditor knows or has reason to know of such duty, then the payment must be so applied.") *See generally* Tenn.Code Ann. § 66–11–138 (1982) (it is felony for contractor, with intent to defraud, to use proceeds of payment made to him on account of improving certain real property for purpose other than to pay for labor or material furnished by his order for that improvement while leaving debt for such labor and materials unpaid).

Thus, of the $2,000 paid, $1,906.69 would have applied to the debt for $1,906.69 incurred on May 17, 1984. The remaining $93.31 would have applied to debt incurred on May 24, 1984. Since the check was both delivered and honored within 45 days after the May 24 debt was incurred, there can be no question that this $93.31 portion of the payment was within the 45–day rule. The only issue is whether the $1,906.69 portion of the payment which applied to the May 17 debt was paid within 45 days after the May 17 debt was incurred.

check to be the date of its delivery best implements this policy.

*Remes v. Acme Carton Corporation,* 43 B.R. at 876.

*See also Forell v. Ace Doran Hauling & Rigging Company (In re Dependable Products, Inc.),* 51 B.R. 338, 339–40 (Bankr.S.D.Ohio 1985) ("[A] conclusion that transfer occurred upon delivery for purposes of § 547(c)(2) fosters the objective of facilitating rehabilitation by encouraging creditors to continue doing business with the troubled enterprise."). *And see* S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5874 ("The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.").

Since the $2,000 check was delivered within the 45–day period after May 17, 1984, the entire $2,000 payment comes within the § 547(c)(2) exception to avoidability.