In re Joseph Michael WHITE d/b/a
Kalthoff Heating & Cooling, and
Evaline White, Debtors.

John P. NEWTON, Jr., Trustee in
Bankruptcy, Plaintiff,

v.

ANDREWS DISTRIBUTING
COMPANY, Defendant.

Bankruptcy No. 3–85–0036.
Adv. No. 3–85–1118.

United States Bankruptcy Court,
E.D. Tennessee.

March 21, 1986.

See also Bkrtcy. 58 B.R. 266.

John P. Newton, Jr. of Shanks & Blackstock, Knoxville, Tenn., for plaintiff.

Scott R. Fransen of Ambrose, Wilson & Grimm, Knoxville, Tenn., for defendant.

RALPH H. KELLEY, Bankruptcy Judge.

The debtor, Joseph Michael White, did business as Kalthoff Heating and Cooling. The defendant, Andrews Distributing Company, was one of Kalthoff's major suppliers. Within 90 days before bankruptcy, Kalthoff made three payments to Andrews. Each payment was made by check. They totaled $21,259.90. The trustee in bankruptcy brought this suit against Andrews to recover the payments as preferential transfers under Bankruptcy Code § 547. 11 U.S.C. § 547.

The parties have agreed that one payment was within the contemporaneous exchange exception and another was within the exception for payments in the ordinary course of business. 11 U.S.C. § 547(c)(1) & (c)(2).

As to the third payment, the parties have submitted this proceeding for decision on cross motions for summary judgment with briefs and supporting depositions, documents, and stipulations.

The parties have stipulated that the payment in question meets the requirements for an avoidable preference under § 547(b). They agree that the question is whether the payment is within the exception for a contemporaneous exchange or the exception for a payment in the ordinary course of business.

The payment was $8,192.72 paid by a check written on January 10, 1985, for a debt due on December 31, 1984. The check was posted to Kalthoff's account with Andrews on January 15, 1985, and was honored by Kalthoff's bank on January 16, 1985.

Joseph Andrews is the vice-president and controller of Andrews Distributing Company. He was involved in collecting debts owed to Andrews. He testified as follows.

Kalthoff began buying from Andrews in 1980 or 1981. Andrews was its main supplier. Kalthoff ran significantly behind in paying its debts to Andrews and decided to buy from other suppliers. Kalthoff owed Andrews about $60,000 that it finally finished paying in 1982. Thereafter Kalthoff usually paid on time.

Kalthoff's debts to Andrews were usually due on the 25th of the month. Kalthoff paid regularly by the 25th "give or take three or four days". Kalthoff generally paid the full amount of the invoices due except for disputed invoices and invoices for parts that should have been covered by a warranty.

Invoices dated from the 26th of one month through the 25th of the next were due the following month. For example, the March billings were for invoices dated February 26th through March 25th. Andrews allowed a fifteen day grace period for pay-

ment—through the 25th of April. It did not count a debt as past due until after the 25th.

The exception to this pattern was for the November billing; invoices dated October 26th through November 25th were due December 31st rather than December 25th. The payment in question applied to the November billings. The first invoice was dated November 1, 1984 and the last was dated November 21, 1984. Payment was due December 31, 1984.

Failure to pay the bill on December 31st put the account "on a thirty day basis", but the payment was "not significantly past due". Kalthoff's account was "relatively current" through the November billing except for disputed invoices and parts that should have been covered by a warranty.

Mr. Andrews also submitted two documents—a summary of cash receipts from Kalthoff and a statement summary. They are included in the appendix to this opinion as items 1 and 2.

Barry Davis was the office manager for Kalthoff Heating and Cooling from May, 1983 to February, 1985. He supervised Kalthoff's bookkeeping, did monthly statements, and figured costs on each job. He wrote and signed most of the checks issued by Kalthoff. He testified as follows.

Most of the time Kalthoff's payments to Andrews did not exactly match the amount of Andrews' invoices. There would be disputed invoices and some invoices that had been paid.

He made an end of the month list of debts due and a statement showing the amount available to pay on the debts. He showed the list and statement to the debtor who would mark the debts he wanted paid.

Kalthoff was just getting by at the end of 1984. It was paying most of its debts as they came due, but was behind in payments to some major suppliers, namely, Apex, Ed's Supply, and Associated Equipment.

The payment in question was due December 31st, rather than December 25th, because it was the end of the year. Kalthoff normally would have paid the bill on time.

He thought he had talked to Joseph Andrews about the payment being a little late but couldn't swear to it. He believed he called Andrews because otherwise Andrews would have called him, as he routinely did when payment was not made on time. Davis could not recall any reason for failure to pay the debt on time except lack of cash.

Two government (HUD) jobs in Texas contributed greatly to Kalthoff's financial problems. Kalthoff expected to complete the work in mid–1984, but it turned out to be January, 1985. Kalthoff couldn't get final payment until the jobs were inspected. In February, 1985, when Davis was laid off, Kalthoff was still owed the retainage on the jobs. Kalthoff may also have underbid the jobs. Davis estimated that Kalthoff lost as much as $100,000 on the jobs.

The parties submitted written stipulations, including the following that deal with the payment in question:

3. Check No. 1568 in the amount of $8,191.72 was:

 (a) tendered on or about January 10, 1985;

 (b) paid by the bank on January 16, 1985;

 (c) because of the end of the year, the November 25, 1984 payment was due on or before December 31, 1984, to include invoices issued up to November 25, 1984;

 (d) in payment of debts incurred by the debtor in the ordinary course of business or financial affairs of the debtor and of Andrews Distributing Company.

The parties also submitted the following stipulations of law:

4. (a) Andrews Distributing Company would have been entitled to file a supplier's or materialman's lien for products installed, but for which Andrews Distributing Company was not paid. T.C.A. § 66–11–101 et seq.

(b) A materialman or supplier is not entitled to a lien for products which it has supplied, and has been paid, even though

preference litigation might require the disgorgement of such payment.

(c) The time has expired for Andrews to file a materialman's lien on any goods supplied under any invoice in question, even though Andrews may be required to forfeit.

### Discussion

Though the point is not controlling in this proceeding, the trustee's trial memorandum mis-states the beginning date of the preference period. The mistake may have been typographical, mathematical, or a mis-reading of the statute. In any event, the court takes the opportunity to explain how the preference period is calculated.

■■ The statute provides for the avoidance of preferential transfers made "on or within 90 days before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 547(b)(4)(A). The court reads this to mean 90 calendar days before the day on which the petition was filed. According to the trustee's trial memorandum, the petition was filed on March 18, 1985. Ninety days before March 18, 1985 began at 12 a.m., December 18, 1984. The calculation is as follows:

| | |
|---|---|
| March 1–17, 1985 | 17 days |
| February 1–28, 1985 | 28 days |
| January 1–31, 1985 | 31 days |
| December 18–31, 1984 | 14 days |
| | 90 days |

This eliminates splitting a day at the beginning of the preference period, but makes it 90 days plus part of the day of filing. The court believes this is the correct method of calculating the preference period. See M. Andrew, Computation of the Bankruptcy Preference Period: A Trap for Practitioners, 90 Comm.L.J. 170 (1985).

A second preliminary question is when to consider the payment made—on the date the check was written, the date it was honored, or the in-between date it was received by Andrews.

The exception for payments in the ordinary course of business originally protected only payments made within 45 days after the debt was incurred. The question that arose was whether a check received during the 45 days but not honored until afterward was payment within the 45 days. This court held that, for purposes of the contemporaneous exchange exception, a check is payment when it is received, unless it is dishonored. In re Johnson, 25 B.R. 889 (Bankr.E.D.Tenn.1982).

■ In an opinion not yet reported, this court reached the same conclusion as to the exception for payments in the ordinary course of business. A "good" check is payment when it is received. In re Downs, Still v. Kingsberry Homes, 65 B.R. 1 (E.D.Tenn.1985). See also In re Fassnacht, 45 B.R. 209 (Bankr.E.D.Tenn.1984). Judge Bare of this district reached the same conclusion in In re Compton, 55 B.R. 180 (Bankr.E.D.Tenn.1985). This accords with the actual practice of treating good checks as cash payment.

■ The 45–day limit does not apply in this proceeding because it was deleted from the statute as to cases filed after October 7, 1984. B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 7.05[4] (2d ed. 1986). Nevertheless, in deciding whether a late payment was in the ordinary course of business, the court must know how late the payment was. The date a good check is received should be the date of payment for this purpose also.

■ The check must have been received on January 15th at the latest, since Andrews posted it to Kalthoff's account on that day. The court will treat the check as received about fifteen days late.

The main issue before the court is whether a payment made fifteen days after it was due could have been made in the ordinary course of business of the debtor and the creditor and according to ordinary business terms.

Andrews cites *In re Fulghum Constr. Co.*, 45 B.R. 112, 11 Coll.Bankr.Cases 2d 1378 (Bankr.M.D.Tenn.1984). In that proceeding Judge Paine decided that rental payments were made within 45 days after the debt was incurred, but did not discuss whether late payments could be in the ordinary course of business.

The trustee cites *In re Ewald Bros., Inc.*, 45 B.R. 52 (Bankr.D.Minn.1984). In that proceeding, Judge Mahoney decided that a late payment may be within the ordinary course of business exception. More importantly, Judge Mahoney decided that what is ordinary depends to some extent on the parties' past course of dealing. Judge Leffler of the Western District of Tennessee recently followed *In re Ewald* in this respect. *In re Decor Noll Corp., Carson v. Metzger Business Forms*, 65 B.R. 707 (Bankr.W.D.Tenn. 1985).

The proof is not entirely clear. The court attempted to combine Andrews' two exhibits to see exactly how Kalthoff's payments were applied. The court's combination is item 3 in the appendix. The court used it to make up the following much simpler chart.

| Amount | Date Due | Check(s) Dated | Amount Paid | Remarks |
|---|---|---|---|---|
| $ 6,345.17 | 4-25-83 | 4-27-83 | In full | |
| 14,588.27 | 5-25-83 | 5-26-83 | In full | |
| 1,819.49 | 6-25-83 | 6-23-83 | In full | |
| 2,533.16 | 7-25-83 | 7-27-83 | In full | |
| 3,304.39 | 8-25-83 | 8-22-83 | $3,290.55 | |
| 13.84 | 8-25-83 | | | The check was not |
| 3,268.94 | 9-25-83 | 10-12-83 | $3,202.07 | enough to pay the |
| 674.01 | 10-25-83 | | | total, but it was somehow paid in full before 10-25-83. |
| 4,511.13 | 11-25-83 | 11-9-83 | $3,281.14 | |
| | | 3-12-84 | 605.89 | |
| | | 7-26-84 | 624.10 | |
| 2,255.15 | 12-31-83 | 12-09-83 | In full | |
| 117,377.78 | 1-25-84 | 1-5-84 | $89,651.70 | |
| | | 2-4-84 | 17,962.70 | |
| | | 3-12-84 | 9,251.24 | |
| | | 5-25-84 | 77.80 | |
| | | 7-26-84 | 434.34 | |
| 5,021.15 | 2-25-84 | 3-12-84 | In full | |
| 838.11 | 4-25-84 | 5-25-84 | In full | |
| 2,126.03 | 5-25-84 | 5-25-84 | In full | |
| 7,029.30 | 6-25-84 | 6-25-84 | 2,703.07 | |
| | 7-26-84 | 7-26-84 | 4,326.23 | |

| Amount | Date Due | Check(s) Dated | Amount Paid | Remarks |
|---|---|---|---|---|
| $9,649.42 | 7–25–84 | 7–26–84<br>8–2–84<br>10–4–84 | $2,510.92<br>4,783.84<br>1,520.00 | Again, the checks are less than the total due but the debt appears to have been paid in full on 10–4–84. |
| 8,730.35 | 8–25–84 | 8–23–84 | 8,712.79 | This was apparently paid in full by 8–25–84, though the check was less than the amount due. |
| 73,281.04 | 9–25–84 | 10–4–84 | $64,233.48<br>6,705.54 | Again, the payments do not exactly match the amount due but it was apparently paid in full by 10–25–84. |
| 12,280.92 | 10–25–84 | 10–25–84 | In full | |
| 8,928.13 | 11–25–84 | 11–29–84 | In full | |
| 60,263.69 | 12–31–84 | 1–10–85 | $8,191.72 | This is the payment in question. The balance was reduced to $2,450.71 as of 1–25–84 without any other checks. |

The chart reveals that Kalthoff regularly made late payments, ranging from a few days late to around thirty days late. Kalthoff did not finally pay some debts for several months, but payments in the meantime were applied to pay later debts in full.

 The proof did not show who decided how to apply Kalthoff's payments. In any event, a payment applied to a later debt may be within the exception. The court is not required to re-apply payments to the oldest debts first. *In re Compton*, 55 B.R. 180 (Bankr.E.D.Tenn.1985); *In re Clothes, Inc.*, 45 B.R. 419 (Bankr.D.N.D. 1984); *In re Downs, Still v. Kingsberry Homes*, 65 B.R. 1 (Bankr.E.D.Tenn. 1985).

The $8,200 payment in question should have left a balance of about $52,000 on the debts due December 31st. Joseph Andrews testified, however, that Kalthoff was about current through the November billings, except for disputed invoices and debts for parts covered by warranties. The exhibits bear out this statement. As of January 25th, only $2,450.71 was owed even though the only payment shown is the $8,200 in question.

Kalthoff made a later payment of about $12,000 but it was applied to December billings—invoices after November 26th and due January 25th. (Davis Dep. Exh. 1)

Joseph Andrews also called the payment in question "not significantly past due."

The exception for payments in the ordinary course of business is as follows:

(c) The trustee may not avoid under this section a transfer—

.　　.　　.　　.　　.

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

.　　.　　.　　.　　.

The court has already pointed out that the exception previously included a requirement of payment within 45 days after the debt was incurred. The legislative history of the exception in its original form gave the following general explanation:

The purpose of the exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); reprinted Appendices 2 & 3, L. King, Collier on Bankruptcy (15th ed. 1985).

This explanation does little to answer the question of whether a late payment may be in the ordinary course of business and according to ordinary business terms.

■■■ The court is of the opinion that a late payment may be made according to ordinary business terms.

Ordinary business terms often allow late payment but impose a penalty. If the drafters of the exception had intended it to apply only to payments made on or before the due date, the requirement could easily have been made explicit.

The requirement of payment according to ordinary business terms appears to be concerned primarily with unusual conditions imposed by the creditor or unusual methods of payment used by the debtor. *In re Craig Oil Co.*, 31 B.R. 402, CCH Bankr.L.Rep. ¶ 69286 (Bankr.M.D.Ga.1983).

■■■ Does this mean a payment in the correct amount is made according to ordinary business terms no matter how late it is? The court thinks not. The payment in question, however, was only about two weeks late. There was nothing unusual about the terms or the method of the payment. Payment two weeks late was not unusual between the parties. In these circumstances, the court will not hold that the two-week delay put the payment outside of ordinary business terms.

■■■ Much the same reasoning applies to the requirement that payment be made in the ordinary course of business. The problem would be more difficult if the payment was several months overdue and the creditor regularly accepted payments that late. The exception does not necessarily protect long overdue payments when the creditor intended only to give short term credit as usual in its billing practices. The fact that a long overdue payment is ordinary between the parties does not mean it is in the ordinary course of business within the meaning of the exception. The payment in question was not so long overdue that it should be considered as outside the ordinary course of business.

The trustee emphasizes the time elapsed between the dates the debts were incurred and when they were paid. The earliest invoice was dated November 1, 1984, and the latest November 21, 1984. The purchases were 40 to 60 days before the due date and 55 to 75 days before payment.

■■■ The exception was meant to accommodate short term extensions of credit that occur in continuing dealings, such as those between Kalthoff and Andrews, especially since the 45–day limit was deleted. The delay to the due date is irrelevant unless it allows such a long time that the

exception perhaps should not apply. Andrews billing cycle allowed 60 days from the earliest invoice to its due date, except the November billings which had an extra six days to December 31st. Neither 60 nor 66 days is too long for the exception to apply.

The court notes that the extra six days made no difference since the first invoice was dated November 1st. The delay that caused the problem was the fifteen days after the due date. The delay of fifteen days did not by itself make the payment outside the ordinary course of business.

The trustee also argued that after December 31, 1984, Andrews put Kalthoff on a cash basis, or in other words, ceased extending credit. The cited passage in Joseph Andrews' deposition does not support this contention. He said only that failure to pay on December 31st put the debt in the 30 day category. This is explained by refering to Andrews' exhibit 2, the statement summary. An amount not paid on the due date went into the 30-day column. If not paid by the 25th of the next month, it went into the 60-day column, and so on. Furthermore, the large amount shown to be due on December 31st was understood by the parties to include disputed invoices and warranty claims that Andrews did not expect to be paid on time. Kalthoff's failure to pay on December 31st did not cause Andrews undue alarm or provoke any unusual action to obtain payment. It was routine for Barry Davis to call Joseph Andrews to tell him when payment would be late, because it was also routine for Andrews to call Davis if payment was late and he hadn't been warned.

■ Another question is raised by the fact that Kalthoff was not paying all its debts on time. It was behind in payments to some major suppliers and was choosing what bills to pay. One commentator has suggested that the payments which a failing debtor decides to make may not be in the ordinary course of business. 2 W. Norton, Bankr.Law & Proc. § 32.19 (Callaghan & Co.1985). When the debtor's collapse is imminent, it is outside the ordinary course

of business to choose to prefer one creditor while knowing that the others will be left to collect from a bankrupt or reorganizing business.

Kalthoff's business had not reached that point when the payment was made. The business was just scraping by, but it was generally current in paying its bills, including its suppliers, except for three mentioned by Barry Davis. Kalthoff made another payment to Andrews about a week after the payment in question. Kalthoff paid for a C.O.D. purchase on February 25th. Its bankruptcy petition was filed March 18th. The facts lead the court to conclude that Kalthoff did not choose to pay Andrews ahead of other creditors in contemplation of ceasing business. Kalthoff still had an ordinary course of business. Indeed, the trustee has admitted that the exception applies to the $12,000 payment made about a week after the payment in question.

The court concludes that the payment was made in the ordinary course of business and according to ordinary business terms. There is no question that the debt was incurred in the ordinary course of business. Thus, the exception applies.

■ The stipulations as to Andrews' right to a contractor's, subcontractor's, or supplier's statutory lien at the time of payment are relevant to the contemporaneous exchange exception. 11 U.S.C. § 547(c)(1). Generally, a payment during the preference period to prevent the attachment of a lien is not within the exception, because attachment of the lien is also avoidable as a preference. However, attachment or perfection of a statutory lien during the preference period is generally not avoidable as a preference. 11 U.S.C. § 547(c)(6). Thus, a payment to prevent attachment or perfection of a statutory lien may not be avoidable as a preference. The question is much more difficult if the lien would have attached to a third party's property, rather than the debtor's property. Compare *In re Johnson*, 25 B.R. 889 (Bankr.E.D.Tenn. 1982) and *In re Dick Henley, Inc.*, 38 B.R. 210, 10 Coll.Bankr.Cas.2d 806 (Bankr.M.D.

La.1984). See also *In re Advanced Contractors,* 44 B.R. 239, 12 Bankr.Ct.Dec. 529 (Bankr.M.D.Fla.1984). In light of Kalthoff's business, Andrews' liens probably would have attached to third parties' property. Since the evidence does not say one way or the other and the court has already held the payment to be protected from avoidance under another exception, the court need not decide whether the exception for contemporaneous exchanges applies.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

## APPENDIX 1

### KALTHOFF HEATING AND COOLING
### CASH RECEIPTS SUMMARY

| Date posted | Check Date | Amount |
|---|---|---|
| 4–27–83 | 4–27–83 | $6,345.17 |
| 5–27–83 | 5–26–83 | 14,588.27 |
| 6–24–83 | 6–23–83 | $1,819.49 |
| 7–28–83 | 7–27–83 | 2,533.16 |
| 8–24–83 | 8–22–83 | 3,290.55 |
| 10–17–83 | 10–12–83 | 3,202.07 |
| 11–10–83 | 11–09–83 | 3,281.14 |
| 12–12–83 | 12–09–83 | 2,255.15 |
| 1–06–84 | 1–05–84 | 89,651.70 |
| 2–06–84 | 2–04–84 | 17,962.70 |
| 3–13–84 | 3–12–84 | 14,601.18 |
| 5–29–84 | 5–25–84 | 3,041.94 |
| 6–28–84 | 6–25–84 | 2,703.07 |
| 7–26–84 | 7–26–84 | 7,895.59 |
| 8–03–84 | 8–02–84 | 4,801.50 |
| 8–24–84 | 8–23–84 | 8,712.79 |
| 10–04–84 | 10–04–84 | 64,233.48 |
| 10–04–84 | 10–04–84 | 1,520.00 |
| 10–26–84 | 10–25–84 | 18,520.59 |
| 12–03–84 | 11–29–84 | 8,928.13 |
| 1–15–85 | 1–10–85 | 8,191.72 |
| 1–29–85 | 1–23–85 | 12,115.61 |
| 2–26–85 | 2–25–85 | 952.57* |

*COD check

## APPENDIX 2

### KALTHOFF HEATING AND COOLING
### STATEMENT SUMMARY

| Stmt. Date | Cur | 30 | 60* | 90* | Total |
|---|---|---|---|---|---|
| 4–25–83 | 14,588.27 | 6,345.17 | – | – | 20,933.44 |
| 5–25–83 | 1,819.49 | 14,588.27 | – | – | 16,407.76 |
| 6–25–83 | 2,533.16 | – | – | – | 2,533.16 |
| 7–25–83 | 3,304.39 | 2,533.16 | – | – | 5,837.55 |
| 8–25–83 | 3,268.94 | 13.84 | – | – | 3,282.78 |
| 9–25–83 | 674.01 | 3,268.94 | 13.84 | – | 3,956.79 |
| 10–25–83 | 4,511.13 | – | – | – | 4,511.13 |
| 11–25–83 | 2,255.15 | 1,229.99 | – | – | 3,485.14 |
| 12–30–83 | 117,377.78 | – | 1,299.99 | – | 118,607.77 |
| 1–25–84 | 5,021.15 | 27,726.08 | – | 1,229.99 | 33,977.22 |
| 2–25–84 | (277.10) | 5,021.15 | 9,763.38 | 1,229.99 | 15,737.42 |
| 3–25–84 | 838.11 | – | 512.14 | 624.10 | 1,974.35 |
| 4–25–84 | 2,126.03 | 838.11 | – | 1,136.24 | 4,100.38 |
| 5–25–84 | 7,029.30 | 2,126.24 | 2,126.03 | 1,136.24 | 11,129.68 |
| 6–25–84 | 9,439.00 | 7,029.30 | – | 1,058.44 | 17,526.74 |
| 7–25–84 | 8,730.35 | 9,649.52 | 4,326.23 | 1,058.44 | 23,764.54 |
| 8–25–84 | 73,281.04 | – | 1,520.00 | – | 74,801.04 |
| 9–25–84 | 12,280.92 | 73,281.04 | – | 1,520.00 | 87,081.96 |
| 10–25–84 | 8,928.13 | 18,986.46 | – | – | 27,914.59 |
| 11–25–84 | 60,263.69 | 8,928.13 | – | – | 89,191.82 |
| 12–31–84 | 80,507.03 | 60,263.69 | – | – | 140,770.72 |
| 1–25–85 | 13,123.67 | 80,507.71 | 2,450.71 | – | 96,081.41 |
| 2–25–85 | 3,067.57 | 13,123.67 | 68,391.42 | – | 87,033.37 |

Received no more payments beyond COD for $952.57 received 2–25–85.

*Represents warranty and miscellaneous deductions due credit or in dispute.

## APPENDIX 3

| BALANCE | | CHECKS | | | BALANCE | |
|---|---|---|---|---|---|---|
| Amount | Due Date | Amount | Dated | Posted | Amount | Due |
| 6,345.17 | 4–25–83 | 6,345.17 | 4–27–83 | 4–27–83 | 0 | |
| 14,588.27 | 5–25–83 | 14,588.27 | 5–26–83 | 5–27–83 | 0 | |
| 1,819.49 | 6–25–83 | 1,819.49 | 6–23–83 | 6–24–83 | 0 | |
| 2,533.16 | 7–25–83 | 2,533.16 | 7–27–83 | 7–28–83 | 0 | |
| 3,304.39 | 8–25–83 | 3,290.55 | 8–22–83 | 8–24–83 | 13.84 | 8–25–83 |
| 13.84<br>3,268.94<br>674.01 | 8–25–83<br>9–25–83<br>10–25–83 | 3,202.07 | 10–12–83 | 10–17–83 | 754.72[1] | |
| 4,511.13 | 11–25–83 | 3,281.14 | 11–09–83 | 11–10–83 | 1,229.99 | 11–25–83 |
| 1,229.99<br>2,255.15 | 11–25–83<br>12–31–83 | 2,255.15 | 12–09–83 | 12–12–83 | 1,229.99<br>0 | 11–25–83 |
| 1,229.99<br>117,377.78 | 11–25–83<br>1–25–84 | 89,651.70 | 1–05–84 | 1–06–84 | 1,229.99<br>27,726.08 | 11–25–83<br>1–25–84 |
| 1,229.99<br>27,726.08<br>5,021.15 | 11–25–83<br>1–25–84<br>2–25–84 | 17,962.70 | 2–04–84 | 2–06–84 | 1,229.99<br>9,763.38<br>5,021.15 | 11–25–83<br>1–25–84<br>2–25–84 |
| 1,229.99<br>9,763.38<br>5,021.15 | 11–25–83<br>1–25–84<br>2–25–84 | 14,601.18<br>(277.10) | 3–12–84<br>(2–25–84) | 3–13–84 | 624.10<br>512.14<br>0 | 11–25–83<br>1–25–84<br>2–25–84 |
| 624.10<br>512.14<br>838.11<br>2,126.03 | 11–25–83<br>1–25–84<br>4–25–84<br>5–25–84 | 3,041.94 | 5–25–84 | 5–29–84 | 624.10<br>434.34<br>0<br>0 | 11–25–83<br>1–25–84<br>4–25–84<br>5–25–84 |
| 624.10<br>434.34<br>7,029.30 | 11–25–83<br>1–25–84<br>6–25–84 | 2,703.07 | 6–25–84 | 6–28–84 | 624.10<br>434.34<br>4,326.23 | 11–25–83<br>1–25–84<br>6–25–84 |
| 624.10<br>434.34<br>4,326.23<br>9,649.42[2] | 11–25–83<br>1–25–84<br>6–25–84<br>7–25–84 | 7,895.59 | 7–26–84 | 7–26–84 | 0<br>0<br>0<br>7,138.50 | |
| 7,138.50<br>8,730.35 | 7–25–84<br>8–25–84 | 4,801.50<br>8,712.79 | 8–02–84<br>8–23–84 | 8–03–84<br>8–24–84 | 2,354.66[3]<br>0 | |
| 1,520.00<br>73,281.04 | 7–25–84<br>9–25–84 | 1,520.00<br>64,233.48 | 10–04–84<br>10–04–84 | 10–04–84<br>10–04–84 | 9,047.56[4] | |
| 6,705.54<br>12,280.92 | 9–25–84<br>10–25–84 | 18,520.59 | 10–25–84 | 10–26–84 | 465.87[5] | 10–25–84 |
| 8,928.13 | 11–25–84 | 8,928.13 | 11–29–84 | 12–03–84 | 0 | |
| 60,263.69 | 12–31–84 | 8,191.72 | 1–10–85 | 1–15–85 | 52,071.97[6] | |
| 2,450.71<br>80,507.71<br>13,123.67 | 12–31–84<br>1–25–84<br>2–25–84 | 12,115.61[7] | 1–23–85 | 1–29–85 | | |

1 Not carried over.

2 Increased from 9,439.00 without explanation

3 Not carried over in full.

4 Not carried over in full.

5 Not carried over.

6 Not carried over, reduced to $2, 450.71 by 1–25–85 without check payments by Kalthoff.

7 Apparently applied to invoices due 1–25–84.