In re SEAWINDS LIMITED, a corporation, Debtor.

XTRA INCORPORATED, Appellant,

v.

SEAWINDS LIMITED, a corporation, Appellee.

SEAWINDS LIMITED, a corporation, Cross–Appellant,

v.

XTRA INCORPORATED, Cross–Appellee.

Nos. 3–84–02038 JR, C–88–0430 RFP and C–88–0980 RFP.
Adv. No. 3–85–0779 LK.

United States District Court, N.D. California.

Aug. 22, 1988.

Thomas Paine, Law Offices of Thomas Paine, John Droeger, Hall, Henry, Oliver & McReav, San Francisco, Cal., appellant.

Tracy Green, Goldberg, Stinnett & Mac-Donald, San Francisco, Cal., appellee.

## ORDER GRANTING CROSS–APPELLANT'S MOTION FOR SUMMARY JUDGMENT

PECKHAM, Chief Judge.

### I. INTRODUCTION

This is a consolidated appeal from an order of summary judgment entered by the bankruptcy court declaring certain pre-petition payments received by appellant XTRA, Inc. ("XTRA") to be voidable preferences. Cross-appellant Chapter 11 debtor Seawinds Limited ("Seawinds") made seven disputed payments to XTRA during the preference period. The bankruptcy court found that five of the disputed transfers at issue were voidable preferences, and two were not.

Appellant XTRA appeals the bankruptcy court's decision with respect to the five transfers the court found were voidable preferences. Cross-appellant Seawinds appeals the bankruptcy court's decision with respect to the two transfers the court found were not voidable preferences. Seawinds objected to Bankruptcy Appellate Panel jurisdiction, so this court has jurisdiction over these appeals under 28 U.S.C. section 158.

### II. DECISION

The court finds that all of the disputed payments were voidable preferences not entitled to the protection of the Bankruptcy Code's "ordinary course" exception. After May 8, 1984, when XTRA terminated all of its leases with Seawinds, any payments made by Seawinds to XTRA were not within the ordinary course of business dealings between the parties, and were not made according to ordinary business terms.

### III. FACTS

Seawinds, the plaintiff and cross-appellant, was in the business of transporting goods by sea until October 22, 1984, when it filed its petition for relief under Chapter 11 of the United States Bankruptcy Code. XTRA was in the business of supplying cargo containers, chassis for those containers, and related equipment to shipping companies such as Seawinds.

In early 1983, XTRA and Seawinds entered into four contracts, under which Seawinds agreed to lease containers, chassis and related equipment from XTRA.

Seawinds had a history of paying XTRA late under these contracts. For a time XTRA tolerated Seawind's late payments. Eventually, XTRA became dissatisfied and began contacting Seawinds to see what could be done to have Seawinds pay the invoices on a timely basis.

On April 18, 1984, XTRA sent Seawinds a telex advising that further delays in the payment of overdue amounts would not be tolerated. On May 8, 1984, XTRA notified Seawinds that due to Seawinds' continued default under the terms of the leases,

XTRA was terminating its leases effective immediately. The May 8 notification demanded immediate payment of all outstanding charges and immediate return of all equipment. On August 2, 1984, XTRA notified Seawinds that it would raise the rental rates on the remaining equipment (effective September 1, 1988) until it could be collected.

On October 22, 1984, Seawinds filed a petition for relief under Chapter 11. Pursuant to 11 U.S.C. section 547(b), Seawinds attempted to avoid the following transfers which were made to XTRA within 90 days of the filing of its bankruptcy petition:

| Date of Payment | Amount |
| --- | --- |
| 7/27/84 | $28,891.50 |
| 8/3/84 | 30,480.75 |
| 8/16/84 | 21,700.00 |
| 8/29/84 | 60,198.90 |
| 9/14/84 | 21,000.00 |
| 9/21/84 | 22,986.87 |
| 10/8/84 | 43,299.00 |

The parties made motions for summary judgment on this issue before the bankruptcy court. Prior to the summary judgment hearing, the parties stipulated that all of the above transfers from Seawinds to XTRA were preferential within the meaning of Bankruptcy Code section 547(b). The only issue before the bankruptcy court was whether some or all of these transfers were subject to the "ordinary course of business" exception set forth in Bankruptcy Code section 547(c)(2).

The bankruptcy court found that two of the seven transfers (the ones dated 8/16/84 and 9/14/84) were made within the ordinary course of business and therefore, were non-avoidable:

> Summary judgment is granted for defendant and denied as to plaintiff with respect to those transfers dated August 16, 1984, for the sum of $21,700.00 and that transfer dated September 14, 1984 for the sum of $21,000.00. Said transfers were in payment of debts incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; made in the ordinary course of business or financial affairs of the debtor and the transferee; and made according to ordinary business terms.

Said payments were less than one week late, thus under the circumstances such a low level of delinquency would not have led to the announced cancellation of the contract.

Findings of Fact and Conclusions of Law at 4, Record on Appeal at 249.

The bankruptcy court held that the remaining five transfers were not made "according to ordinary business terms" because XTRA's repeated complaints, notice of default and notice of rate increase indicated that Seawinds' delinquent payments were not acceptable:

> As to the remaining transfers, judgment is granted in favor of plaintiff and against defendant. The remainder of the transfers were not made according to ordinary business terms because XTRA found the late payments unacceptable. XTRA repeatedly notified Seawinds that such late payments would not be tolerated and cancelled Seawinds' contract. Subsequently, XTRA raised the contract rate for the remaining equipment until it could be picked up. Such conduct on the part of XTRA indicates that Seawinds' delinquent payments were not acceptable; thus, the remaining transfers were not made according to ordinary business terms.

Findings of Fact and Conclusions of Law at 5, Record on Appeal at 250.

The bankruptcy court entered judgment for Seawinds in the amount of $90,270.87, after deducting the amount of stipulated new value. Both parties filed timely notices of appeal.

## IV. DISCUSSION

### A. THE LEGAL STANDARD.

In this court, the bankruptcy court's decision on cross-motions for summary judgment is subject to *de novo* review. *In re Bishop, Baldwin, Rewald, Dillinham & Wong,* 819 F.2d 214, 215 (9th Cir.1987); *Union Central Life Ins. Co. v. Wernick,* 777 F.2d 499, 500 (9th Cir.1985); *In re Ellsworth,* 722 F.2d 1448 (9th Cir.1984); *In re Stephens,* 51 B.R. 591, 594 (Bankr. 9th Cir.1985). A reviewing Court will affirm a

grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir.1980).

Bankruptcy Code section 547(c)(2) provides in relevant part:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

In order to fall within the ordinary course of business exception, the defendant must establish each of the elements of section 547(c)(2) by a preponderance of the evidence. *In re Ullman*, 80 B.R. 101, 102 (Bankr.S.D.Ohio 1987).

## B. APPLICATION OF SECTION 547(c)(2) TO THE PRESENT CASE.

■ Seawinds does not dispute that XTRA can satisfy section 547(c)(2)(A). Seawinds apparently does dispute both elements (B) and (C): "made in the ordinary course of business" and "made according to ordinary business terms." [1]

XTRA argues that all seven payments were made within the ordinary course of business between the parties, and on ordinary business terms, because (1) Seawinds was habitually late in paying XTRA (so the lateness of these payments was in accord-ance with past practice), (2) with respect to the termination of the leases, XTRA never took any steps to implement this termination prior to the filing of Seawinds' bankruptcy on October 22, 1984, and (3) with respect to the rate increase, Seawinds never paid any invoices calculated at the increased rate. Appellant's Opening Brief at 4.

XTRA's case authority supports the proposition that late payments *can* fall within the "ordinary business terms" recognized by the parties. *In re Gaildeen Industries, Inc.*, 71 B.R. 759, 766 (Bankr.9th Cir.1987) (payments made 17 or 18 days late were "in this case" within the ordinary course of business dealings between the parties); *In re White*, 64 B.R. 843 (Bankr.E.D.Tenn.1986) (payment made two weeks late was made according to ordinary business terms).

Seawinds argues that all seven payments were made outside the ordinary course of business, because of the following factors: (1) in May 1984, XTRA declared a default under the leases and advised Seawinds of its intention to terminate the agreements, (2) in August 1984, XTRA notified Seawinds of a rate increase effective September 1, 1984. In a nutshell, Seawinds' argument is that "Terminating the leases because of Seawinds' delinquent conduct and raising the rates on the remaining equipment because of the continued default does not exemplify a relation conducted in accordance with ordinary business terms." Cross–Appellant's Opening Brief at 11.

The court finds that the notice of termination and change of rental rates in this case distinguish this case from cases like *Gaildeen*. Bankruptcy Code section 547(c)(2) "should protect those payments which do not result from 'unusual' debt collection or payment practices. To the extent an otherwise 'normal' payment occurs in response to such practices, it is

---

1. Seawinds actually appears to use the concepts of "ordinary course of business" and "ordinary business terms" interchangeably in its papers, and XTRA argues that in the court below Seawinds only challenged the "ordinary business terms" element. Appellant's Opening Brief at 7. Since the standard of review is de novo, the court will consider whether XTRA has met its burden of proving both "the ordinary course of business" under section 547(c)(2)(B) and "ordinary business terms" under section 547(c)(2)(C).

without the scope of Section 547(c)(2)." *In re Craig Oil*, 785 F.2d 1563, 1566 (11th Cir.1986).

■ The court finds that since every payment at issue here was made after the notice of termination on May 8, 1984, every payment here was outside the "ordinary course of business or financial affairs of the debtor and the transferee" under section 547(c)(2)(B). The May 8 notice of termination provided in relevant part:

> XTRA hereby gives notice of its termination of the leases, effective immediately ... XTRA hereby demands that lessee immediately gather and return all XTRA equipment now in its possession or control by re-delivery to any authorized XTRA depot ... Further, XTRA thereby [sic] makes demand upon lessee for the immediate payment of all outstanding rental, repair, or other charges owed XTRA as of the date of this telex.

Record on Appeal at 101.

The fact that XTRA then had difficulty in actually collecting the money and obtaining the return of the equipment does not change the fact that after May 8 the parties were dealing in the light of terminated agreements and a demand for payment of all amounts past due. This can hardly be considered dealing in the "ordinary course of business."

For the same reason, all seven payments at issue here were not made "according to ordinary business terms" under section 547(c)(2)(C). The phrase "ordinary business terms," whether seen as the terms established between the two parties or as ordinary business terms in the industry,[2] simply does not contemplate payments made after termination of all outstanding agreements between the parties and a demand for immediate payment.

The above conclusion is reinforced by the fact that six of the seven payments at issue were made *after* the August 2, 1984 date on which XTRA raised its rates to Seawinds for all outstanding equipment. Three of the payments were actually made after the new rates went into effect on September 1, 1984. The letter notifying Seawinds of the raising of rates clearly indicates that the rate increase is not just a routine one, since it explicitly references the May 8 telex terminating the leases. Record on Appeal at 102. As Seawinds argues, XTRA's failure to collect on the invoices billed at the higher rate is simply a result of Seawinds' filing under Chapter 11 on October 22, 1984.

XTRA's final argument is that avoidance of the payments to it in this case will frustrate the policy of the "ordinary course" exception, by frustrating the bankruptcy goal of "enabling debtors to rehabilitate themselves by insulating normal business transactions from the trustee's avoidance power." *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984).

On the contrary, the court finds that in this case avoidance of all of the payments is in accordance with both bankruptcy policy and common sense. A creditor who takes the steps of terminating its contracts with a struggling debtor, demanding immediate payment and return of equipment, and then raising rates on any remaining equipment is using economic pressure to obtain payment as soon as possible. Within the 90 day preference period, such payments are made to the detriment of other creditors. This discrimination between creditors is the essence of a preference, and is prohibited by the Bankruptcy Code.

The bankruptcy court made a distinction between the payments here based upon the degree of lateness of the payments, holding that the 8/16/84 and 9/14/84 payments

---

**2.** *See generally In re Steel Improvement Co.*, 79 B.R. 681 (Bankr.E.D.Michigan 1987) (adopting minority view that in order to fall within section 547(c)(2) party must establish that the manner and timing of late payments are consistent with the ordinary business terms *in the industry* (section 547(c)(2)(C)), as well as the ordinary course of business between the parties (section 547(c)(2)(B))). In this case, the parties and the bankruptcy court have followed the majority view by focusing upon whether the payments were consistent with the ordinary course of business and business terms established *between the parties*. However, XTRA did argue before the bankruptcy court that the payments were within the ordinary business terms recognized in the parties' industry, and submitted a Declaration to that effect. Denehy Decl. at 2, Record on Appeal at 168.

were "less than one week late" and hence were made within the ordinary course of business, while the other disputed payments were late enough to be "unacceptable" to XTRA and hence were not made according to ordinary business terms. Findings of Fact and Conclusions of Law at 4, 5, Record on Appeal at 249, 250. As a purely factual matter, the parties agree, and the court finds, that the 8/16/84 and 9/14/84 were closer to two weeks than one week late. Since at least one payment held by the bankruptcy court to be outside the ordinary course of business (the payment of 8/29/84) was less than two weeks late, the distinction based upon the lateness of the payments breaks down upon close analysis. More importantly, under the analysis above, the degree of lateness of each payment is less relevant than the fact that all of the disputed payments were made after the termination of the leases, and most of them were made after the raising of the rental rates.

For the above reasons, the court finds that all seven payments in dispute here were voidable preferences not entitled to the protection of the Bankruptcy Code's "ordinary course" exception. No material facts are in dispute, and cross-appellant Seawinds is entitled to judgment as a matter of law.