Emmett J. Schnepp, J.
Both parties have moved for summary judgment in this action which involves a determination of the priority of conflicting security interests. The facts are essentially not in dispute. On or about July 19, 1971 a continuing dealer floor plan agreement was executed by Pat’s Mobile Homes (dealer) and First Federal Savings and Loan Association (First Federal), whereby First Federal was granted a continuing security interest in all new and used merchandise then owned or posssessed by dealer, and under which financing was extended in connection with dealer’s acquisition of new and used mobile homes and trailers, accessories and furnishings. First Federal paid the manufacturer the price of each unit delivered to and accepted by dealer and retained the *869 invoice and certificate of origin of each unit. Dealer then executed a demand note payable to First Federal and a security interest in the individual unit, which First Federal held, together with the title documents, until it received payment for the unit from dealer. The agreement further provided that the security interest extended to all proceeds from the merchandise, including accounts receivable and chattel paper arising from its sale.
On June 29, 1973 Charles and Mary Davis (Davis) executed a retail installment contract with dealer for the purchase of a new 1973 Kenilworth mobile home, Serial No. 11818, previously financed by First Federal, for which dealer had executed a demand note and security interest to First Federal. In the Davis retail installment contract a total down payment of $1,400 was recited, which consisted of a cash payment of $400, a credit of $500 for a washer and dryer, original equipment in the unit which Davis did not purchase, and the balance by the reduction in the purchase price and a payment for the cost of installing the unit on the Davis lot. The retail installment contract signed by Davis as "buyers”, which recited that Davis had purchased and acknowledged delivery, examination and acceptance of the vehicle in question, obligated them to make certain installment payments on the mobile home and granted to dealer a security interest in the unit. Dealer later assigned this contract to Payment Plans, Inc., which in turn assigned it to the defendant, who paid Payment Plans $7,267, which Payment Plans then transmitted to dealer. In the retail installment contract dealer certified that the described unit was sold to Davis on June 29, 1973, and it executed and delivered to Davis a State of New York Department of Motor Vehicles "Original Certificate of Sale”, which stated that the date of purchase and date of sale was June 29, 1973. Dealer defaulted in its agreement to pay First Federal for the unit and absconded. First Federal later repossessed the mobile homes located on dealer’s business site, including the unit in issue, which had remained there pending its installation on a lot to be acquired by Davis. Thereafter First Federal and defendant entered into an agreement whereby the mobile home was released to defendant, on the condition that defendant would pay the value of the mobile home up to a certain maximum, if the court determined that the First Federal security interest had priority. Plaintiff, an insurance carrier, is subrogated to First Federal’s rights. No questions are raised *870 respecting the proper filing of the appropriate financing statements.
First Federal contends that it held a perfected security interest, which was not extinguished by the Davis purchase, since the contract was executory and no sale to Davis occurred. It concedes that its rights would have been extinguished, if Davis purchased the unit in the ordinary course of business.
Subdivision (1) of section 9-307 of the Uniform Commercial Code provides that a buyer in the ordinary course of business takes free of a security interest created by the seller. To be a buyer in the ordinary course of business (Uniform Commercial Code, § 1-201, subd [9]), there must be a sale, which consists in the passing of title from the buyer to the seller for a price (Uniform Commercial Code, § 2-106, subd [1]), and "unless otherwise explicitly agreed” title passes at the time of the physical delivery of goods to the buyer (Uniform Commercial Code, § 2-401).
Davis was a good faith purchaser, without knowledge of First Federal’s security interest in the goods and was a "Buyer in ordinary course of business”. (Uniform Commercial Code, § 1-201, subd [9].) The unit was identified in the retail installment contract, which acknowledged its sale and delivery, the down payment was made, secured credit was given by the execution of the contract by the buyer and seller and a certificate of sale delivered. The installation of the mobile home by dealer on a site was all that remained to be done. Dealer had unsuccessfully sought to obtain the lot for Davis on which to install the mobile home, following which and on July 24, 1973 Davis concluded a successful search for a site, and then learned, when endeavors were made to arrange for the installation of the mobile home on their lot, that all mobile homes, including the unit in issue, had been removed from dealer’s business lot.
Delivery consists of the act by which goods are placed within the actual or constructive possession of another. A constructive delivery takes place when the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding. The act or state of possessing is a condition of facts under which one can exercise power over property at his pleasure to the exclusion of all other persons and a constructive possession is assumed to exist where one claims to hold by virtue of some title without its actual detention or custody. *871 Delivery and possession are not synonymous and "if there is a sale and the buyer has obtained title to the goods, his status as a buyer in ordinary course will not be defeated merely because he has not taken possession.” (Chrysler Corp. v Adamatic, Inc., 59 Wis 2d 219, 239; see, also, Smith, Title And The Right To Possession Under The Uniform Commerical Code, 10 B C Ind & Com L Rev, 39, 60.)
The mobile home remained on the dealer’s business site for the convenience of Davis. Proof of a manual delivery by the dealer is not necessary and here, because of the bulk of the unit, would have been impossible and virtual or constructive delivery is sufficient. The mobile home was held pending the acquisition of facilities on which to locate it. All of Davis’ obligations under the contract had been performed. Section 2-308 of the Uniform Commercial Code provides that unless otherwise agreed the place for delivery of goods is the seller’s place of business. Here delivery took place at the dealer’s place of business, where the contract was executed, payment made and the certificate of sale acknowledging a delivery and an entitlement to register the vehicle was executed and delivered. There the sale occurred and title passed to Davis. Any other holding would be inconsistent with the conduct of the parties.
It is held that Davis was a buyer in the ordinary course of business and took the mobile home free of plaintiff’s security interest, which attached to the proceeds in the hands of dealer, and the defendant’s security interest has priority over that of the plaintiff. (See Chrysler Credit Corp. v Sharp, 56 Misc 2d 261.) Accordingly, the motion by defendant for summary judgment is granted.