**In the Matter of PHOENIX STEEL CORPORATION, Debtor.**

**PHOENIX STEEL CORPORATION, Plaintiff,**

**v.**

**RITTENHOUSE ORGANIZATION, Defendant.**

**Bankruptcy No. 83–290. Adv. No. 85–55.**

United States Bankruptcy Court, D. Delaware.

July 27, 1987.

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, Del., for debtor/plaintiff.

Craig B. Smith, Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., for defendant.

David C. Corujo, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

On July 30, 1985, approximately two years after filing a Chapter 11 case, Phoenix Steel Corporation sued Rittenhouse Organization to recover an alleged preference of $50,625. Following discovery, pre-trial conference and several rescheduled trial dates, the court, on request of counsel, permitted the parties to submit a stipulation of facts (Doc. # 17) in lieu of trial.

Phoenix paid $50,625 to Rittenhouse on July 5, 1983. Phoenix claims that this payment, made within the 90 days preceding the filing of Phoenix' Chapter 11 case, falls within the purview of 11 U.S.C. § 547(b).[1]

The July 5 payment was the third payment due under a purchase order from Phoenix to Rittenhouse issued on or about May 5 in connection with the purchase for $135,000 of a used shot blaster line located on property of Bethlehem Steel Corp. in Pottstown, Montgomery County, Pennsylvania. The terms of sale, embodied in an agreement of sale dated May 4 and 6, 1983, were:

> TERMS:
> "AS IS, WHERE IS"
> Removal: Not to exceed 60 (sixty) days.
> Payment Schedule:
> Upon Receipt of Agreement — $33,750
> Due And Payable 5/16/83 — $50,625
> Balance Due And Payable — $50,625
> Before Completion of
> Removal

Phoenix made the first two payments, disassembled the equipment and requested its release before making the final pay-ment. The request was refused. Phoenix paid the $50,625 on July 5 and removed the equipment.

Phoenix filed a Chapter 11 case on August 12, 1983. Phoenix characterizes the transaction as a sale on credit and contends that but for the July 5 payment Rittenhouse, as an unsecured creditor, would have received something less than 100% in a liquidation case. Rittenhouse on the other hand contends that it had a security interest in the equipment.

■ If on the filing date, Rittenhouse was a creditor holding a security interest in the equipment, it could exercise rights under the Code to collect the amount of the final payment from its collateral. Since the equipment was worth $135,000, it is clear that Rittenhouse would have been paid in full. Thus, the nature of the debt, secured or unsecured, is of critical importance. That determination requires an examination of the entire transaction. The agreement, reached no later than May 6, requires Phoenix to pay 66% of the purchase price within 10 days. Phoenix did this and began to disassemble the equipment which was to take nearly two months. The agreement clearly states that removal of the equipment was not to take place before Rittenhouse received final payment. It is clear that although Rittenhouse was selling the equipment to Phoenix, it intended to retain control subject to final payment.

The language of the agreement together with Phoenix' request to remove the equipment before final payment and Rittenhouse's denial reinforces the court's conclusion that Rittenhouse intended to retain title. In doing this, it created a security interest in its favor. *Gillespie v. Great Atlantic and Pacific Tea Co.,* 10 U.C.C. Rep.Serv. 754, 758 (N.C.App., 1972). In *Gillespie,* seller was a supermarket seek-

---

1. Under § 547(b) of the Code, a trustee/debtor in possession may avoid certain transfers of property. A preference is a transfer of an interest in debtor's property to or for the benefit of a creditor for or on account of an antecedent debt owing by the debtor before the transfer was made. The transfer must have been made while the debtor was insolvent and within 90 days before the filing of the bankruptcy petition. Further, as a result of the transfer the creditor must have received more than such creditor would receive in a liquidation had the transfer not been made and such creditor shared in the proceeds of the liquidation.

ing to enforce its security interest in merchandise which debtor-buyer physically possessed. More specifically buyer physically held the merchandise but could not leave the store without paying for it. In the case at bar, the facts are similar. Phoenix physically disassembled the equipment but it could not take the equipment from the Bethlehem Plant until it had made the final payment.

Before Rittenhouse could prevail as a creditor holding a security interest in a liquidation case, that security interest would have to have been perfected. Security interests arising from sales transactions are governed by Title 13 Pa.C.S. § 9113 which provides:

A security interest arising solely under Division 2 (relating to sale) is subject to the provisions of this Division except to the extent that and so long as debtor does not have or does not lawfully obtain possession of the goods.

(1) No security agreement is necessary to make the security interest enforceable.

(2) No filing is required to perfect the security interest.

(3) The rights of the secured party on default by the debtor are governed by Division 2.

This raises the question of whether Phoenix or Rittenhouse was in possession of the equipment.

■ At first blush, it would seem that Phoenix was in possession. The goods were identified at the time the contract was signed and the contract did not specifically provide a delivery date. *See* 13 Pa.C.S. § 2401(3)(ii).[2] However, if Phoenix had not fully paid the sales price, Rittenhouse had such control over the equipment that it could have exercised remedies under 13 Pa.C.S. § 2703—withheld delivery, resell and recover damages, cancel, etc. In order to exercise these rights, Rittenhouse itself would have to have been in possession of the equipment. The question of "possession" is further complicated by the fact that the equipment was at all relevant times at Bethlehem Steel's Pottstown location. The parties did not address the relationship of Rittenhouse and Bethlehem Steel in their stipulation of fact;[3] nor is there anything in the record to indicate that Bethlehem Steel made any claim whatsoever with respect to the equipment. From its size, Bethlehem Steel had to know the equipment was there and acquiesced in permitting its disassembly and removal by Phoenix. Consequently, the known facts as well as what can be inferred from those facts suggest that Bethlehem Steel was a bailee with knowledge of Rittenhouse's rights in the property which equates to Rittenhouse's "possession" under 13 Pa. C.S. § 9305, which perfects a security interest without filing.

This sale involved the transfer of heavy equipment requiring progressive disassembly. The terms of the agreement prohibited Phoenix from taking possession of the equipment until after the purchase price had been paid. The actions of the parties and the nature of the goods sold make 13 Pa.C.S. § 2401(3)(ii) inapplicable and 13 Pa. C.S. § 2401(2) requiring physical delivery applicable. *Mechanics National Bank of Worcester v. Gaucher*, 25 U.C.C.Rep.Serv. 1313 (Mass.App., 1979). This result is derived from an exception carved out by the *Gaucher* court which held that in the case of heavy equipment requiring progressive disassembly, the provisions of UCC 2–401(3)(b) are inapplicable and UCC 2–401(2) (adopted in Pennsylvania as 13 Pa.C.S. § 2401(3)(ii) and 13 Pa.C.S. § 2401(2)) must be followed. It should be noted that had buyer fully paid for the goods and merely entrusted them in the care of the seller, the result would be different. See *Integrity Ins. Co. v. Marine Midland Bank-West-*

**2.** (3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods....

(ii) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

**3.** Neither party may now assert that this is a genuine issue of material fact. The matter is before the court at the request of counsel on stipulation of fact *in lieu of trial* and not on a motion for summary judgment.

*ern,* 90 Misc.2d 868, 396 N.Y.S.2d 319 (NY Sup Ct.1977) and 13 Pa.C.S. § 2403.

Thus, Rittenhouse maintained a security interest in the equipment subject to the final payment and did not receive more than it would have received in a liquidation proceeding. Moreover, the transaction would be exempt from avoidance under 11 U.S.C. § 547(c)(1). It is specifically recognized that "relinquishment of an inchoate lien right constitutes new value" under the Bankruptcy Code. *In Re Advances Contractors,* 44 B.R. 239 (Bkrtcy M.D.Fla., 1984). Thus, on July 5, 1983, when Rittenhouse released to Phoenix the equipment in exchange for the final payment, it released a lien right which was a contemporaneous exchange for new value.

Even if Phoenix had been able to meet its burden of proof, the equities demand a judgment in favor of Rittenhouse. Phoenix' estate was not depleted. It paid $135,000 and received equipment of equal value. Phoenix waited almost two years to file its complaint which if successful would have resulted in Rittenhouse being an unsecured creditor. Rittenhouse was not listed in Phoenix' schedules, did not receive notice of the bankruptcy case and would have been deprived of any participation in the case inasmuch as Phoenix was successful in obtaining an order confirming its plan the same day it filed this action.

For all of the foregoing reasons, judgment will be entered in favor of the defendant Rittenhouse.